IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTIRCT OF TENNESSEE

HANNAH ASHBROOK,

    Plaintiff,

v.                                                                                                           No. 1:24-cv-00165

MEIGS COUNTY, TENNESSEE et al.,

    Defendants.

## MEMORANDUM OF FACTS AND LAW IN SUPPORT OF MOTION TO DISMISS CASEY STOKES ON THE GROUNDS OF JUDICIAL IMMUNITY[1]

Judge Stokes is entitled to judicial immunity. The actual facts, unlike the Complaint's allegations, are largely not disputed on the issue before the Court[2].

This matter has not been set for trial. This matter is filed in accordance with the Scheduling Order's directive that the issue of judicial immunity be addressed[3].

As Plaintiff's Complaint alleges, Plaintiff, Hannah Ashbrook, appeared in the General Sessions Court for Meigs County, Tennessee to support her boyfriend, Steven

---

[1] Again, this matter is not set for trial or accompanying Scheduling Order. Judge Stokes has yet to be deposed and is not required until the threshold issue of judicial immunity is determined. The "judgment" referenced by Paragraph 47 of the Complaint does unequivocally read that Plaintiff engaged in contemptable behavior in the courtroom. Yet, no doubt, Judge Stokes will and can contribute to the precise behavior he deemed contemptable in a discovery deposition or other form of testimony at the requisite time. For this reason, no testimony of Judge Stokes has been submitted as the same is not necessary to the determination of judicial immunity. Again, based upon the Plaintiff's Complaint, Judge Stokes is judicially immune from Plaintiff's suit.

[2] Judge Stokes, of course, denies the allegations of the Complaint and relies on the propriety of his contempt finding against the Plaintiff as entirely lawful. Judge Stokes denies Plaintiff has sustained a deprivation of her federal constitutional rights, any deprivation of state law, or suffered any wrongdoing on May 11, 2023, or at any other time.

[3] Accordingly, the filing of this Motion is without prejudice to the filing of another Motion, if necessary, demonstrating that there is no genuine issue of material fact that unlike what the Complaint alleges, Plaintiff's federal constitutional rights were not violated, nor did any Defendant violate state law.

Kelsey. Mr. Kelsey had been arrested on May 2, 2023 and charged with driving while license revoked, possession of unlawful drug paraphernalia uses and activities, evading arrest, and the manufacture, deliver and sale and/or possession with intent to manufacture, deliver or sale methamphetamine. Mr. Kelsey was arrested by Officer Samuel Whiting of the City of Decatur Police Department. Apparently, this was his first court appearance after being bonded out of jail.

No dispute exists that Judge Stokes was the presiding judicial officer in the General Sessions Court for Meigs County, Tennessee, and therefore all cases pending and other happenings in court fell totally within his jurisdiction.

Plaintiff was indisputably with her boyfriend, Mr. Steven Kelsey. Mr. Kelsey was indisputably lawfully present to answer charges which had been filed in the General Sessions Court for Meigs County, Tennessee. As a criminal defendant under pre-trial release, Kelsey was drug tested and failed. He was taken into custody.

Although the same will no doubt be disputed by Ms. Ashbrook, Judge Stokes contends that Ms. Ashbrook and Mr. Kelsey were engaged in inappropriate conduct for which they could lawfully be cited for contempt after being repeatedly warned to cease and desist. Candidly, the conduct in and of itself was enough to cite Plaintiff with criminal contempt. Yet, Judge Stokes requested if Plaintiff would submit to a drug test. The request was made to the Plaintiff by Officer Ben Christian[4] of the Meigs County Sheriff's

---

[4] Officer Samuel Whiting of the City of Decatur Police Department was subpoenaed by Plaintiff. (Whiting deposition at p. 5,6). It was not unusual for Whiting to transport prisoners to the Meigs County Jail and was doing so May 11, 2023. (Id. at p. 7, 16). Plaintiff's boyfriend, Steven Kelsey, was arrested after testing positive for illegal drugs (Id. at p. 10-11, 17-18, 37) Plaintiff was upset and engaged in inappropriate behavior in the courtroom hallway. (Id. at 15, 19, 20, 30). Plaintiff also cursed (Id. at 31), obstructed Whiting, and did not tell him the truth. (Id. at 9, 31, 32-33, 35). Suffice it to say, Ms. Ashbrook was not acting normally despite the business that was going on between lawyers, litigants, law enforcement, and others necessary to the business of the General

Department. Plaintiff agreed and submitted to a drug test by Court Officer Carol Petitt[5]. As indicated in the Complaint, Plaintiff failed the drug test and was taken into custody and served ten (10) days in the Detention Facility for Meigs County, Tennessee for criminal contempt. She was released and has not been subject to any further prosecution.

Plaintiff challenges the decision by Judge Stokes for placing her in criminal contempt. That is it. Judge Stokes' decision was grounded not only in Plaintiff's conduct in the courtroom that Judge Stokes witnessed, but also the same was confirmed by the failed drug test which explained Plaintiff's disruptive behavior. Plaintiff actually cited to the Judgment for Criminal Contempt in her Complaint. Accordingly, it is that decision that Plaintiff is now attacking in a private civil rights action pursuant to 42 U.S.C. § 1983 and two supplemental state law claims for false arrest and false imprisonment respectfully.

Respectfully, Judge Stokes is entitled to judicial immunity. Plaintiff's challenge is precisely the reason why Judge Stokes, and all other judges, enjoys judicial immunity. It is axiomatic that the doctrine prohibits judicial officers from facing such lawsuits as the one brought by Plaintiff. If it were otherwise, official judicial's decisions would all have to be filtered through the credibility or lack of credibility of a subsequent civil rights action by a disgruntled individual or made foreseeing such a possibility. The cloak of immunity ensures that judicial officers are not "chilled" in any way in making decisions affecting an impartial judicial process. The general citizenry desires that judicial officers resolve issues

---

Sessions Court for Meigs County, Tennessee. (Id. at p. 38-42) Whiting did comment that Plaintiff engaged in vulgarity on May 11, 2023, objected to taking the test but did not question the results. (Id. at 43-45, 49).

[5] Ms. Petitt is the County's Probation Officer. (Petitt deposition at p. 7), and part of her duties can be administering drug tests. (Id. at p. 12). On May 11, 2023, she tested Plaintiff and Plaintiff failed, and the test revealed the presence of several illegal substances. Like Whiting, she also observed Plaintiff's behavior in the Meigs County Courthouse. (Id. at 23-25). Plaintiff was tested under the authority of Judge Stokes and his office. (Id. at 32-33).

without having to worry that they are going to be sued by an individual or individuals who may be adversely affected by the decision. This principle is deeply grounded in our juris prudence and the same has been recognized on multiple occasions by the United States Supreme Court.

Again, the purpose of this Motion is to determine whether Judge Stokes is entitled to judicial immunity in this action, and not the determination concerning the facts of Plaintiff's action. Plaintiff was citied and imprisoned for criminal contempt. Plaintiff has attacked Judge Stokes in this action as the result of the decision to find her in criminal contempt. Accordingly, that is the decision act, at least according to the Complaint, to be evaluated for the applicability of judicial immunity. As stated, the same is clearly a judicial act and accordingly Judge Stokes is entitled to judicial immunity.

LAW AND ARGUMENT

It is well-settled that judges are generally absolutely immune from civil suits for money damages. Barnes v. Winchell, 105 F.3d 1111, 1115 (6th Cir. 1997) (citing Mireles v. Waco, 502 U.S. 9, 9, 112 S.Ct. 286, 287, 116 L.Ed.2d 9 (1991); Forrester v. White, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872)). This includes immunity from lawsuits brought pursuant to 42 U.S.C. § 1983. Id. (citing Pierson, 386 U.S. at 554, 87 S.Ct. at 1217-18). The judicial immunity doctrine is justified "by a long -settled understanding that the independent and impartial exercise of judgement vital to the judiciary might be impaired by exposure to potential damages liability." Id. (quoting

4

Antoine, 508 U.S. at 435, 113 S.Ct. at 2171). Therefore, the "unfairness and injustice to a litigant [that] may result on occasion, [because] 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself'" cannot outweigh compelling public benefits. Id. Quoting Mireles, 502 U.S. at 10, 112 S.Ct. at 287 (quoting Braley, 80 U.S. (13 Wall.) at 347)). If this were not the case and judges were personally liable for erroneous decisions, then "the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions to provoke such suits." Id. (quoting Forrester, 484 U.S. at 226-27, 108 S. Ct. at 544).

The doctrine of judicial immunity protects a sweeping range of judicial actions. Id. (citing, e.g. Mireles, 502 U.S. at 12, 13, 112 S.Ct. at 288, 288-29 (concluding that judge was immune from liability for allegedly authorizing police officers to use excessive force to hale an attorney into his courtroom); Ashelman v. Pope, 793 F.2d 1072 (9th Cir.1986) (extending absolute judicial immunity to a judge who allegedly conspired with a prosecutor to predetermine the outcome of a proceeding); King v. Myers, 973 F.2d 354 (4th Cir.1992) (holding that magistrate judge was absolutely immune from civil liability for directing a police officer to effect warrantless arrest); Green v. Maraio, 722 F.2d 1013 (2d Cir.1983) (recognizing immunity where a judge instructed a court reporter to alter a trial transcript)). The United States Supreme Court has provided that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority," nor "if his exercise of authority is flawed by the commission

of grave procedural errors." Id. (quoting Stump, 435 U.S. at 356, 359, 98 S.Ct. at 1105, 1106).

Absolute judicial immunity is overcome in just two situations:

First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in absence of all jurisdiction.

Id. At 1115-16 (quoting Mireles, 502 U.S. at 11-12, 112 S.Ct. at 288 (internal citations omitted); see also Mann v. Conlin, 22 F.3d 100, 103 (6th Cir.) (same), cert. denied, 513 U.S. 870, 115 S.Ct. 193, 130 L.Ed.2d 126 (1994)).

Tennessee state law prohibits contempt of court. In fact, the same is codified in the statutes of the State of Tennessee, and the Tennessee Rules of Criminal Procedure. Specifically, T.C.A. § 29-9-102 prohibits "any person in the presence of the court, or so near thereto as to obstruct the administration of justice" from engaging in "willful misbehavior". See T.C.A. § 29-9-102(1). That statute also prohibits the engaging of other types of behavior including a "catch-all" prohibiting any other act or omission considered to be contempt. See T.C.A. § 29-9-102(6). No dispute exists that criminal contempt is punishable according to T.C.A. § 29-9-103 by either a fine or imprisonment not exceeding ten (10) days. Indeed, T.C.A. § 29-9-107 prohibits anyone from swearing or cursing in the presence of any court of record. Again, in addition to the statutes of the State of Tennessee, the Tenn. R. Crim. P. 42 also prohibits criminal contempt, and subsection (a) of the Rule even allows it to be enforce summarily[6].

---

[6] The same is primarily pointed out to illustrate that contempt exists, it is punishable, and it was correctly applied by Judge Stokes. Again, the same does not precisely go to the issue of judicial immunity, but rather is pointed out that Judge Stokes was clearly authorized to do what he did.

As such, no reason exists to strip Judge Stokes of judicial immunity. Plaintiff may be upset with the citation for criminal contempt, probably cause may not have existed, it may have been a bad decision, it may have been a decision made in bad faith, or otherwise flawed either procedurally or substantively. Yet, the same does not matter. Under well-established precedent, no action exists against Judge Stokes for the same. He is respectfully entitled to immunity. The decision to place Plaintiff in criminal contempt, however characterized by Plaintiff, was a judicial act, and Judge Stokes clearly had jurisdiction to do what is alleged that he did for any offending conduct either in or outside of his courtroom[7].

Respectfully submitted this 31st day of December 2024.

ARTHUR F. KNIGHT, III

*s/Arthur F. Knight, III*
Arthur F. Knight, III, BPR #016178
Law Office of Arthur F. Knight, III
3248 Tazewell Pike, Suite 103
Knoxville, TN 37918
P: (865) 252-0430
arthur@arthurfknightlaw.com
*Attorney for Defendants*

---

[7] It is expected that Plaintiff will offer a distinction between conduct in and outside of the courtroom. Again, Plaintiff was in contempt for conduct she engaged in both inside and directly outside the courtroom. Even if she engaged in no conduct in the courtroom which is denied, the hallway directly outside of the metal detector leading into the General Sessions Court for Meigs County, Tennessee is one regularly used (as it was on May 11, 2023) by attorneys, law enforcement, litigants, and other persons to conduct court business.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document or pleading was served via the Court's ECF filing system on all users authorized and directed to receive such service. Dated December 31, 2024.

*s/Arthur F. Knight, III*
Arthur F. Knight, III