IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

HANNAH ASHBROOK,
    Plaintiff,

v.                                           Docket No.1:24-cv-00165-CLC-SKL
                                                 JURY DEMAND

MEIGS COUNTY, TENNESSEE et al.;
    Defendants.

---

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
### DEFENDANT CASEY STOKES' MOTION TO DISMISS

---

Plaintiff submits this Memorandum in Opposition to Defendant Casey Stokes' Motion to Dismiss and would show the Court the following.

The question before the Court is simple: whether Plaintiff's Complaint "sets forth sufficient facts to "state a claim that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plaintiff submits that it does. The Complaint's detailed, well-pled allegations that Defendant Stokes is not cloaked by judicial immunity and acted without jurisdiction to incarcerate Plaintiff after forcibly drug testing her without a hearing meet and exceed the pleading standard under Rule 12(b)(6). Defendant Stokes' motion should therefore be denied.

Although he offers no evidence in support of his motion, Defendant Stokes raises multiple factual disputes. These disputes include, but are not limited to, the conduct the Defendant alleges to have given rise to his decision to find the Plaintiff guilty of criminal contempt and whether the Plaintiff voluntarily submitted to a drug screen. The very fact that Defendant Stokes raises these issues demonstrates the need for a factfinder to consider evidence to properly rule on the question of Judicial Immunity.

1

The events giving rise to this dispute occurred in the Meigs County Courthouse. That facility has a video recording system in the hallway outside of the Courtroom in which Defendant Stokes presides as the General Sessions Judge of Meigs County. There is no such video inside of the Courtroom. Plaintiff is submitting with this Memorandum the available video footage and deposition testimony from herself and various law enforcement officials, including Defendant Stokes' own court officer. These submissions contradict Defendant Stokes' assertion that the Plaintiff was found guilty of criminal contempt for actions taken in the Courtroom in the presence of Defendant Stokes. To the contrary, the video evidence demonstrates that the Plaintiff engaged in no contemptuous conduct in the presence of Defendant Stokes and that Defendant Stokes has bolstered that claim to justify his outrageous conduct which occurred far outside of any jurisdictional authority. [ECF 1]. Specifically, the video evidence demonstrates that the Plaintiff entered Defendant Stokes' Courtroom on at least two (2) separate and distinct occasions and that Plaintiff exited the Courtroom on each of those occasions without any apparent concern expressed by any courtroom official. The video evidence also shows that Plaintiff literally left the Courthouse following her times in the Courtroom and definitively was not being held for contempt.

Plaintiff submits that Defendant Stokes had two (2) separate and distinct opportunities to hold Plaintiff in contempt for any allegedly "inappropriate behavior" while Plaintiff was present in his Courtroom on May 11, 2023. [ECF No. 37; Hannah Ashbrook Depo. P. 22, 23; Camera 9 Part 1 9:37:21; Camera 10 Part 1 9:37:17 and 9:54:04]. Not only did Defendant Stokes not hold Plaintiff in contempt while she was in his Courtroom, he also did not give Plaintiff any warnings or issue any orders or directives for Plaintiff to leave the Courtroom or the Courthouse. Defendant Stokes further did not bar Plaintiff from his Courtroom or from the Courthouse.

2

[Doyle Fugate Depo. P. 12, 19, 20, 21]. Defendant Stokes did not take any action against Plaintiff until she returned to the Courthouse to conduct a private errand. [Hannah Ashbrook Depo. P. 44 -45; Ben Christian Depo. P. 63]. As Plaintiff's Complaint alleges, Defendant Stokes acted, not as a Judge, but rather as an investigator when he compelled a nonparty private citizen to submit to a drug test.

Defendant Stokes, in his Motion to Dismiss, suggests to this Court that the Plaintiff is challenging the authority of a judge to hold someone in contempt for conduct committed in the Court's presence. Plaintiff makes no such argument. Instead, Plaintiff argues that the conduct that Defendant Stokes claims to be the basis for his actions did not occur and disputes Defendant Stokes' version of these events.

At the time the Plaintiff was wrongly seized by police at the direction of Defendant Stokes she was (1) not a party before the Court; (2) she was not a witness to a preceding pending before the Court, and (3) the Court was not conducting any proceeding. Plaintiff was simply a private citizen engaged in a private errand which in no way could be interpreted as contemptuous behavior in the presence of the Court. The available evidence supports Plaintiff's position and requires this Court to resolve this significant factual dispute between the parties.

Plaintiff's Complaint alleges in detail the course of conduct that Defendant Stokes engaged in on May 11, 2023, to deprive Plaintiff of her due process rights. This case is the only relief provided to Plaintiff because the Judgment for Criminal Contempt entered by Defendant Stokes, without jurisdiction, denied Plaintiff the ability to seek bond, have a hearing, appeal his decision, or otherwise obtain any legal relief. No American citizen should be afraid that if they peacefully entered a courthouse to conduct a personal errand they could be seized by a judge who is standing in the hallway, forced to submit to a drug test over their objection, and find

themselves incarcerated for ten (10) days without a hearing, without due process, without an opportunity to defend themselves, without an opportunity to post bond or hire legal counsel should they test positive for drug use.

The Plaintiff's Complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Defendant Stokes' motion to dismiss should be denied for the reasons set forth below. Should this Court exercise its discretion and consider the evidence outside of the pleadings then Plaintiff respectfully requests that this Court treat Defendant Stokes' motion to dismiss as a motion for summary judgment pursuant to <u>Federal Rule of Civil Procedure</u> 12(d).

**FACTUAL BACKGROUND**

The Complaint alleges the facts below, which are accepted as true and viewed in the light most favorable to Plaintiff for purposes of this motion to dismiss.

Plaintiff accompanied her boyfriend, Steven Kelsey, to the Meigs County General Sessions Court on May 11, 2023, where Defendant Stokes presided as Judge. Plaintiff did not have any official business for herself that day.

The Meigs County Courthouse has a video recording system that records the activities in the hallway outside of the General Sessions Courtroom. According to the video record, Defendant Stokes does not enter the Courtroom until 9:09:22 a.m. ([Camera10part1_0909](Camera10part1_0909))



Plaintiff and her boyfriend, who were obviously already in the Courtroom, are seen exiting the Courtroom with Mr. Kelsey's attorney at 9:37:21 AM.) ([Camera9part2_1048](Camera9part2_1048)) It is undisputed that Defendant Stokes ordered Plaintiff's boyfriend to take a urine drug screen as a bond condition. [Ben Christian Depo. P. 58].

Plaintiff and her boyfriend can be observed entering and exiting the Courtroom a couple of more times with the last exit recorded at 10:48:02 AM. ([Camera11part1_1048](Camera11part1_1048)). Officer Christian testified in his deposition that neither the Plaintiff nor her boyfriend appear to be in police custody at this time. [Ben Christian, Depo. P. 33]. The video record demonstrates that Plaintiff was allowed to leave the Courthouse without any interference from law enforcement while Defendant Stokes was also in the immediate vicinity of the officers. ([Camera11part2_1106](Camera11part2_1106)) As a matter of fact, Officer Christian testified that he accompanied Plaintiff and her boyfriend outside the Courthouse to smoke before Plaintiff left the premises entirely. (Christian Depo., P. 67, L 2-24; ([Camera11part2_1056](Camera11part2_1056)).

Plaintiff does not dispute that her boyfriend's urine sample tested positive after Plaintiff left the Courthouse. The video record shows Plaintiff's boyfriend being placed in custody and reaching into his back pocket to obtain his cell phone. ([Camera11part2_1123](Camera11part2_1123) and [Camera9part2_1123](Camera9part2_1123)). Plaintiff testified in her deposition that her boyfriend called her and asked her to return to the Courthouse to retrieve his personal property because he was being taken into custody. (Ashbrook Depo., P. 23 at L 23-25).

The video record shows Plaintiff re-entering the Courthouse hallway from the stairwell. No officer met Plaintiff to instruct her to leave the Courthouse. Defendant Stokes is again recorded standing in the Courthouse hallway. ([Camera10part2_1124](Camera10part2_1124)) Plaintiff is seen walking down the hallway, turning around, interacting with an officer (who Plaintiff testified she asked

5

where her boyfriend had been taken), turning to walk back in the direction the officer had pointed. Before Plaintiff reached the elevator, an officer got Plaintiff's attention and detained Plaintiff. ([Camera9_part2_1124](Camera9_part2_1124)) ([Camera9part2_1125](Camera9part2_1125)). The video record demonstrates that the Plaintiff became tearful following her detention by the officer. ([Camera9part2_1126](Camera9part2_1126)). At the time of these occurrences, no Courtroom hearing of any type is being conducted by Defendant Stokes and Plaintiff is not interacting with Defendant Stokes.

Defendant Stokes makes two assertions in his motion which are disputed in their entirety. The first, and most important one, is the assertion that Plaintiff voluntarily submitted to a drug test. The Plaintiff adamantly denies that she consented to submit to a drug test and the video record supports Plaintiff's version of the facts. (Ashbrook Depo., P. 48, L 8-15; P. 50, L 16-21; P. 96, L 15-19; P. 97, L 20-25). Any suggestion that Plaintiff consented to drug testing is, at best, substantially in dispute and, more likely, demonstrably false. Whether Plaintiff consented to the drug test that Defendant Stokes "ordered" is a disputed material fact.

Defendant Stokes' second disputed assertion is that Plaintiff engaged in inappropriate conduct while in his Courtroom. Interestingly, and in violation of the statutory requirements for a finding of summary contempt, Defendant Stokes does not specify in either the Judgment of Contempt or in his Motion what conduct Plaintiff allegedly engaged in. Defendant Stokes' own court officer who had been present during all proceedings in the Courtroom that morning is unable to recall the Plaintiff misbehaving in the Courtroom or anywhere else. [Doyle Fugate Depo. 21].

Assuming *arguendo* that Plaintiff had misbehaved in Defendant Stokes' courtroom, Plaintiff was not removed by the court officer from the courtroom, was not placed in custody for that conduct, or found guilty of criminal contempt at any time even remotely near the time that

6

the alleged conduct occurred. Defendant Stokes' own court officer advised that his normal course of action when persons in the Courtroom misbehaves is to take that person outside of the Courtroom to admonish them about their behavior. (Fugate Depo. P. 20, ln 8-24). The Courthouse video demonstrates that the court officer did not escort the Plaintiff out of the Courtroom and Plaintiff was permitted to leave the Courthouse completely with no evidenced that she was admonished or counseled. ([Camera11part2_1106](Camera11part2_1106))

Finally, and perhaps most telling, Plaintiff's boyfriend was not cited or found guilty of criminal contempt for purportedly engaging in inappropriate behavior before the Court.

Defendant Stokes' motion mischaracterizes Officer Sam Whiting's deposition testimony that Plaintiff acted inappropriately in the courthouse hallway on May 11, 2023, when Plaintiff returned to the Courthouse to retrieve her boyfriend's personal property. [ECF 37]. Officer Sam Whiting specifically testified about Plaintiff's behavior:

> Q. Did she engage in any conduct that you as a law enforcement officer would have thought violated the law?
>
> A. She may have been a bit loud in the hallway just as far as getting emotional with it. But other than her acting up outside the courtroom doors I can't think - - there is nothing that I would say that she physically broke any laws as far as her actions are concerned, I don't believe.
>
> Q. Would you have intended to arrest her for disorderly conduct?
>
> A. No, sir.
>
> Q. Disturbing the peace?
>
> A. No sir.
>
> Q. You related that Judge Stokes said to drug test her?
>
> A. Yes sir.

[Sam Whiting Depo P. 20-21].

Defendant Stokes simplifies Plaintiff's Complaint to "sour grapes" for being found in contempt of court. Plaintiff's allegations, supported by the courthouse video recording, clearly show Defendant Stokes no longer had jurisdiction over Plaintiff. Plaintiff had physically left the Courthouse premises entirely and had returned sometime later to retrieve her boyfriend's personal property. [Fugate Depo. P. 28; Ashbrook Depo. P. 44; Camera 11 Part 2 11:24]. Upon her return, Plaintiff exited the stairwell on the floor where the Meigs County General Sessions Court is located and approached an officer to ask where Mr. Kelsey was. [Ashbrook Depo. P. 44; Camera 11 Part 2 11:24].

Defendant Stokes who was standing in the hallway then ordered officers to seize Plaintiff and forced her to submit to a drug test. [Ashbrook Depo. P. 44 -45; Christian Depo. P. 63] ([Camera10part2_1124](Camera10part2_1124)) Such an action has no legal basis and is well outside of the jurisdiction of a General Sessions Court Judge.

Plaintiff acknowledges that she became upset, understandably, which is not a crime in Tennessee. Nonetheless, no proceedings were occurring that could have been adversely affected as Defendant Stokes was outside of the Courtroom without any vestment of his authority such as a judicial robe. Whether or not Plaintiff had drugs in her system is irrelevant because there is no evidence that the Plaintiff engaged in contemptuous conduct in the presence of the Court, nor was Plaintiff subject to any court order or bond condition which required Plaintiff to submit clean drug tests. Plaintiff could not have violated any order or directive from Defendant Stokes as none existed.

Defendant Stokes would like this Court to believe Plaintiff consented to a drug test. [ECF 37]. Plaintiff did not. As a matter of fact, Officer Whiting testified that he was summoned by Ms. Pettit to come to the women's restroom because Plaintiff **"refused to do the drug test."**

(emphasis added) [Sam Whiting Depo. P. 23, L. 1-14]. Officer Whiting also clearly stated that the Defendant said "drug test that woman." (Whiting Depo. P. 22, ln 16- p. 23, ln. 11).

The document alleged to be the judgment of criminal contempt fails to describe or reference any conduct in the Courtroom other than a statement that Plaintiff had drugs in her system. (ECF 1). After Plaintiff tested positive, Defendant Stokes ordered Plaintiff to be placed under arrest, handcuffed, and sentenced Plaintiff to be incarcerated for the maximum sentence of ten (10) days which left Plaintiff without redress to appeal the judgment within the ten (10) days allowed for appealing General Sessions judgments. Tenn. Code Ann. §27-5-108. ([Camera11part2_1436](Camera11part2_1436))

Defendant Stokes correctly acknowledges that judicial immunity applies to state judges. 42 U.S.C. § 1983. However, this immunity is not always an absolute bar for judges. Section 1983, as amended in 1996, prescribes the path to sue for prospective relief against state judges, and as discussed herein, Plaintiff adheres to that path in bringing her Complaint.

**LEGAL STANDARD**

Under Rule 12(b)(6), a plaintiff must allege facts that "'state a claim to relief that is plausible on its face' and that, if accepted as true, are sufficient to 'raise a right to relief above the speculative level.'" Handy-Clay v. City of Memphis, 695 F.3d 531, 538 (6th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). The court must accept factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether the plaintiff may be entitled to relief under any reasonable reading of the complaint. DirecTV, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). A motion to dismiss must be denied if the plaintiff's factual allegations taken as a whole render plaintiff's entitlement for relief plausible. Handy-Clay v. City of Memphis, 695 F.3d 531, 538 (6th Cir. 2012). Should

9

the court consider extrinsic evidence under Federal Rule of Civil Procedure 12(D) the court must treat the motion as one for summary judgment.

## ARGUMENT

Plaintiff's Complaint [ECF 1] states a claim upon which relief may be granted. Defendant Stokes essentially raises two points in support of his contention that Plaintiff's Complaint should be dismissed: (1) judges are always absolutely immune from civil suits for money damages and (2) he was authorized and correctly applied contempt of court in accordance with Tennessee state law. Neither of these points demonstrate any legal insufficiency in Plaintiff's Complaint.

Defendant Stokes attempts to recast the Complaint, revise the law, and dispute the facts, but fails to provide any legitimate basis for dismissal. Defendant Stokes' motion should be denied, and this case should proceed to additional discovery.

### I. The Complaint Successfully Alleges a Cause of Action Under Section 1983.

Plaintiff's allegations state a claim for relief under 42 USC § 1983 in her Complaint. Compl. ¶ 66 [ECF 1]. A plaintiff can bring suit for monetary damages 42 USC § 1983 when (1) the basis of the suit is a judge's "nonjudicial action" or (2) a judge's action clearly exceeds his or her jurisdiction. Barrett v. Harrington, 130 F.3d 246, 255 (6th Cir. 1997) (citing Mireles v. Waco, 502 U.S. 9, 11 (1991). The Complaint alleges both.

Ignoring the factual allegations in the Complaint, Defendant Stokes argues that Plaintiff's challenge to his contempt order to support his position as to why judicial immunity should apply. The integrity of the judicial process requires judges to be able to make decisions resolving litigation without fear of personal liability. Id. at 254. As the United States Supreme Court has said, judicial immunity is necessary because judges, who often are called upon to decide controversial, difficult, and emotion-laden cases, should not have to fear that disgruntled litigants

10

Case 1:24-cv-00165-CLC-MJD   Document 38   Filed 01/21/25   Page 10 of 18
PageID #: 226

will hound them with litigation charging improper judicial behavior. Id.

Plaintiff, however, does not argue that the doctrine of judicial immunity does not exist nor does she argue that it should be lessened or narrowed. Plaintiff respectfully submits that Defendant Stokes misses the point of her Complaint entirely.

Plaintiff specifically alleges that Defendant Stokes acted outside of his jurisdiction and that fact renders judicial immunity inapplicable. The mere fact that a person is a judge does not mean he or she is always immune from civil suits when the conduct at issue is outside of the judge's jurisdictional authority. Plaintiff's Complaint alleges a plausible cause of action under 42 U.S.C. § 1983.

**II. Defendant Stokes Acted As A Cop, Not As A Judge**

Defendant Stokes asserts that he, as a judge, has absolute immunity from this civil suit even if he behaved badly, made a mistake, and wrongfully incarcerated Plaintiff. The Fifth Circuit issued a four (4) part test for determining if something is a judicial act: (1) the act complained of is a normal judicial function; (2) the events occurred in the judge's court or chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his judicial capacity. McAlester v. Brown, 469 F.2d 1280, 1282 (5th Cir. 1972).

Plaintiff asserts that a judge requiring private citizens to forcibly submit to drug tests is not a function normally performed by a judge outside their courtroom or chambers. Defendant Stokes does not specifically address the McAlester factors in his motion, but analysis shows he acted as an investigator, as a law enforcement officer not as a judge, by forcing Plaintiff to submit to a drug test without consent, and without due process.

Plaintiff respectfully submits that conducting drug tests on private citizens, who are not
11

parties before the court, is an investigative function, not a judicial one. Defendant Stokes cited no authority to support that he, as judge, is vested with jurisdiction to conduct independent investigations of non-parties. Defendant Stokes had no jurisdiction over Plaintiff or her conduct at the time of her re-entry to the Courthouse. Plaintiff does not dispute that had Defendant Stokes confronted the Plaintiff while she was present in the Courtroom for any alleged misbehavior the Rules would have permitted him to summarily punish Plaintiff for contempt under the McAlester standards. That did not occur.

Not only does the Plaintiff aver that she did not engage in any inappropriate conduct in the Defendant Stokes' Courtroom, but that Plaintiff literally left the Courthouse premises entirely without any restraint, coercion or protest by Defendant Stokes. Plaintiff was in the hallway at the same time as Defendant Stokes multiple times over the course of the day without any concern or action directed towards her by Defendant Stokes.

Would Defendant Stokes have jurisdiction, while he was standing in the hallway in his street clothes while Court is not in session, to approach any citizen who had just peacefully entered the Courthouse to conduct private business such as to register to vote, pay their taxes, or renew a vehicle registration, and *sua sponte* order that person to be seized by police officers and subjected to a drug test - not only without their consent, but over their voiced objection? Plaintiff cannot fathom any answer to that question in a democratic society other than no.

In the case cited by Defendant Stokes, Mireles v. Waco, 502 U.S. 9 (1991) (superseded by statute), public defender Howard Waco sued Judge Mireles, a state court judge in California, for instructing police officers to bring Waco into court "forcibly and with excessive force." Id, at 10. The court found that this was a judicial act, triggering judicial immunity, because "[a] judge's direction to court officers to bring a person who is in the courthouse before him is a

12

function normally performed by a judge." Id. at 12. However, the Mireles Court acknowledged that "a judge's direction to police officers to carry out a judicial order with excessive force is not a 'function normally performed by a judge.'" Id. at 12.

Plaintiff submits that instructing law enforcement to force a private citizen who is not before the court in any capacity and who is not engaged in outrageous conduct to submit to a drug test against the person's will is not a "function normally performed by a judge." Id. at 12.

Plaintiff readily acknowledges that exercising summary contempt is a normal judicial function used by judges to keep their courtroom orderly. In Marchant v. Moore, No. 3:09-cv-1218, 2010 U.S. Dist. LEXIS 102622 (Tenn. Ct. App. September 28, 2010), the Dickson County General Sessions Judge faced a §1983 action filed by a Plaintiff who was subjected to urinalysis testing when Plaintiff transported a friend to court but remained a spectator in the courtroom. Id at *2. The Marchant Court granted the motion to dismiss finding that the Dickson County General Sessions Judge "had broad statutory to control the actions of those present in the courtroom." Id. at 9. In this case, the video record nor the sworn testimony of the court officer support Defendant Stokes' contention that Plaintiff received warnings in court for her "inappropriate behavior." (Fugate Depo. p. 19, ln 24 – p. 20, ln. 7; P. 21, ln 3-6). Plaintiff was only forced to submit to a drug test when she reentered the Courthouse to retrieve her boyfriend's personal property after he was already in custody and had been transported to jail.

Again, Plaintiff was not before Defendant Stokes in his official capacity nor was Plaintiff in any way interfering with the Court's proceedings or disrupting others. The events did not even occur in Defendant Stokes' chambers. Defendant Stokes was not on the bench, was not clothed in the vestments of his position, and was not conducting any apparent court business when he encountered Plaintiff in the hallway of the Courthouse while Plaintiff was performing a private

13

Case 1:24-cv-00165-CLC-MJD Document 38 Filed 01/21/25 Page 13 of 18
PageID #: 229

errand as a private citizen on May 11, 2023.

Defendant Stokes cites no legal authority supporting his position that requiring a private citizen who is not before his Court to forcibly submit to a drug test is a judicial act absent a bond condition or other order requiring negative drug tests. To the contrary, Defendant Stokes' view is apparently that any function that he performs while he is on the premises of the Courthouse is a "judicial act" shielded by judicial immunity by the mere fact that he is a judge. Plaintiff submits that Defendant Stokes' reading of §1983 is overly broad.

While it is accepted that judicial immunity must be broadly construed, a judge is not entitled to claim judicial immunity when he has not acted within the boundaries of the McAlester factors. Daniels v. Stovall, 660 F. Supp. 301, 304 (S.D. Tex. 1987). Plaintiff has alleged the elements for the four (4) part test in her Complaint that Defendant Stokes' actions were not a judicial act which is all that is required to survive a Rule 12(b)(6) motion.

### III. Absolute Immunity Does Not Cover Defendant Stokes Absolutely

Judicial immunity does not extend to the actions taken by a judge in the clear absence of jurisdiction. In determining if a judge acted in clear absence of jurisdiction, the focus is on subject matter jurisdiction rather than personal jurisdiction. See Ashelman v. Pope, 793 F.2d 1072 (9th Cir. 1986)(cited by Barrett v. Harrington, 130 F.3d 246, 255 (6th Cir. 1997). Here, Defendant Stokes had no jurisdiction to forcibly submit Plaintiff to a drug test on May 11, 2023, when she returned to the Courthouse on a personal errand to collect her boyfriend's personal property.

As Defendant Stokes correctly notes, Tennessee General Sessions Court Judges' subject matter jurisdiction includes sentencing and incarcerating those who appear before them on **official business**. (emphasis added). Plaintiff, however, did not have official business before

14

Defendant Stokes' Court on May 11, 2023 at the time of the events giving rise to her Complaint. The video evidence is irrefutable that the events at issue did not arise directly and immediately out of a confrontation between Plaintiff and Defendant Stokes in his official capacity. Plaintiff entered and exited Defendant Stokes' Courtroom without limitation, and no one sought to restrain her, counsel her, admonish her, or detain her. Plaintiff's actions occurred over multiple hours and no action was taken against her. Only after Plaintiff's boyfriend had been taken into custody and removed from the premises, did Plaintiff re-enter the Courthouse only to have her liberty deprived. It is beyond the bounds of credulity that the Defendant cites the Plaintiff for conduct even his own court officer cannot recall and which Defendant Stokes' failed to specify in either the Judgment of Contempt or in his Motion Plaintiff's contemptuous conduct.

In Tennessee, a trial court has the authority to punish direct contempt summarily but only in exceptional circumstances when necessary to "act swiftly and firmly to prevent contumacious conduct from disrupting the orderly progress" of a court proceeding. See McKenzie v. McKenzie, No. M2013-02003-COA-R3-CV, 2015 Tenn. App. LEXIS 100 (October 21, 2013)(citing Daniels v. Grimac, 342 S.W.3d 511, 517 (Tenn. Ct. App. 2010). A judge must use his eyes and ears for conduct in the courtroom to cite someone for direct criminal contempt. Tenn. Rule of Crim. P. 42(a); Tenn. Code Ann. §29-9-102; See Wilson v. Wilson, No. 03A01-9104-CH-00126, 1992 Tenn. App. LEXIS 715 at *4 (Tenn. Ct. App. August 21, 1992).

Plaintiff respectfully submits that the drug test results are extrinsic evidence which cannot be relied upon by Defendant Stokes to make a finding of criminal contempt against Plaintiff for her alleged inappropriate conduct in the Courtroom or the hallway as alleged in the Judgment of Contempt.  See, McKenzie, supra at *33.

Plaintiff acknowledges that she was before Defendant Stokes' Court as a spectator to support her boyfriend. Defendant Stokes, however, did not cite Plaintiff for contempt for any inappropriate behavior she may have exhibited in his Courtroom on the two (2) occasions Plaintiff was present in his Courtroom. To the contrary, Defendant Stokes only ordered Plaintiff to be seized, detained, forcibly subjected to a drug test, and then held in criminal contempt to serve the maximum 10-days sentence **after she returned to the Courthouse**. (emphasis added) Upon her return to the Courthouse, Plaintiff was in the same position as any other private citizen who peacefully entered the Courthouse to conduct private business when Defendant Stokes directed that Plaintiff be detained and forced to submit to a drug test over her voiced objection.

Defendant Stokes could have punished Plaintiff for indirect contempt for acts committed outside the presence of his Court only with notice and a hearing, neither of which happened here. See McKenzie v. McKenzie, No. M2013-02003-COA-R3-CV, 2015 Tenn. App. LEXIS 100 (October 21, 2013). *Tenn. Rule of Crim. P.* 42(b). Defendant Stokes acted in the absence of all jurisdiction when he ordered Plaintiff to be seized detained, forced to submit to a drug test, and ordered to 10-days incarceration denying her all redress when she peacefully entered the Courthouse to conduct private legitimate business, e.g. to collect her boyfriend's personal property.

Defendant Stokes does not cite a single case for the proposition that Plaintiff's Complaint must fail regardless of the facts. Defendant Stokes' legal arguments fail to establish that Plaintiff's Complaint is barred by law. Defendant Stokes' legal argument simply contends that his judicial immunity is an absolute shield against any suit for any cause of action as a matter of law - which is simply not a plausible reading of 42 U.S.C. §1983. The simple fact that Defendant Stokes is a judge does not mean that Plaintiff loses all right to bring the legal claim that 42

16

U.S.C.§ 1983 affords her.

The facts Plaintiff has alleged in her Complaint, when considered in the light most favorable to her, support a cause of action under 42 U.S.C.§ 1983.

## CONCLUSION

For the foregoing reasons, Defendant Stokes' motion to dismiss should be denied and Plaintiff should be allowed to proceed with discovery towards a hearing on the merits.

**Respectfully submitted,**

**HANNAH ASHBROOK,
Plaintiff, by her attorneys,**

CHANCEY- KANAVOS

BY:   /s/ H. Franklin Chancey
     G. SCOTT KANAVOS, BPR #013192
     H. FRANKLIN CHANCEY, BPR#013187
     Attorneys for Plaintiff
     P.O. Box 42
     Cleveland, TN 37364-0042
     (423) 479-9186
     scott@cklplaw.com
     franklin@cklplaw.com

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing response is being served upon counsel of record via e-mail transmission and via U.S. Mail, directed/addressed as follows:

>Arthur F. Knight III , Esq.
>3248 Tazewell Pike, Suite 103
>Knoxville, TN 37918
>E: arthur@arthurfknightlaw.com
>
>Sheridan C.F. Randolph
>255 N Ocoee St
>P.O. Box 1035
>Cleveland, TN 37364-1035
>sheridan@sheridanrandolph.com
>
>Matthew Rogers
>Rogers Sauceman & Bateman
>P.O. Box 507
>Athens, TN 37371
>matthew@rogerslaw.com

This 21 day of January, 2025.

          BY:   /s/ H. Franklin Chancey
          H. FRANKLIN CHANCEY
          G. SCOTT KANAVOS