Neutral
As of: January 13, 2025 7:09 PM Z

# McKenzie v. McKenzie

Court of Appeals of Tennessee, At Nashville

October 21, 2014, Session; February 27, 2015, Filed

No. M2013-02003-COA-R3-CV

**Reporter**
2015 Tenn. App. LEXIS 100 *

CYNTHIA MCKENZIE v. JASON MCKENZIE

**Prior History:** Tenn. R. App. P. 3 [*1] Appeal as of Right; Judgment of the Circuit Court Reversed and Dismissed. Appeal from the Circuit Court for Davidson County. No. 12D354212D. Philip E. Smith, Judge.

McKenzie v. McKenzie, 2014 Tenn. App. LEXIS 68 (Tenn. Ct. App., Feb. 11, 2014)

**Disposition:** Judgment of the Circuit Court Reversed and Dismissed.

## Core Terms

trial court, intoxicated, contempt, alcohol, summary contempt, morning, urinalysis, extrinsic evidence, criminal contempt, obstruction, prescription, administration of justice, willful, misbehavior, direct contempt, hearings, punish, screen, trial judge, rhetorical question, transactions, proceedings, disrupting, summarily, parties, notice, exceptional circumstances, reasonable doubt, sentencing, afternoon

## Case Summary

### Overview
HOLDINGS: [1]-A summary contempt hearing, under Tenn. R. Crim. P. 42(a), was unnecessary to prevent obstruction of or interference with the administration of justice because nothing showed plaintiff wife obstructed proceedings in a manner constituting exceptional circumstances, the court found it unnecessary to act "swiftly and firmly" to prevent misconduct, when it ordered the parties to undergo drug testing and return to court, and the court did not order the testing due to the wife obstructing a hearing; [2]-Insufficient evidence supported a criminal contempt finding because the court could not rely on extrinsic evidence of the results of drug testing, since the finding had to be based on the court's knowledge obtained through its own senses, the test was not competent for determining intoxication, and the evidence preponderated against a finding that the wife was intoxicated.

### Outcome
Judgment reversed, case dismissed.

## LexisNexis® Headnotes

Civil Procedure > Sanctions > Contempt > General Overview

Criminal Law & Procedure > ... > Contempt > Proceedings > Summary Proceedings

**HN1[⤓] Sanctions, Contempt**

A trial court has the authority to punish direct contempt summarily but only in exceptional

circumstances when necessary to act swiftly and firmly to prevent contumacious conduct from disrupting the orderly progress of a court proceeding.

Civil Procedure > Sanctions > Contempt > Criminal Contempt

Criminal Law & Procedure > ... > Contempt > Proceedings > Summary Proceedings

**HN2[⬇]  Contempt, Criminal Contempt**

Tenn. R. Crim. P. 42(a), which governs the procedure by which a judge may summarily punish a person for criminal contempt, limits the evidence that may be considered to conduct the judge saw or heard in the courtroom.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > Sanctions > Contempt > General Overview

Civil Procedure > Appeals > Standards of Review > De Novo Review

Civil Procedure > Appeals > Standards of Review > Questions of Fact & Law

**HN3[⬇]  Standards of Review, Abuse of Discretion**

A determination of contempt is within the sound discretion of a trial court, subject to the provisions of the law. Generally, the trial court's determination of contempt will not be disturbed absent an abuse of discretion. A trial court abuses its discretion when it applies an incorrect legal standard, or reaches a decision which is against logic or reasoning or that causes an injustice to the party complaining. With respect to a trial court's determinations on questions of law, review is de novo with no presumption of correctness.

Civil Procedure > Sanctions > Contempt > General Overview

Criminal Law & Procedure > ... > Contempt > Proceedings > Court's Power to Punish

**HN4[⬇]  Sanctions, Contempt**

A court's contempt authority is governed by statute, and the procedures related to contempt proceedings are set forth in Tenn. R. Crim. P. 42. Specifically, courts have the power to impose punishment for contempt of court for, inter alia, the willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice, and the willful misbehavior of any of the officers of such courts in their official transactions. Tenn. Code Ann. § 29-9-102.

Civil Procedure > Sanctions > Contempt > General Overview

Criminal Law & Procedure > ... > Contempt > Proceedings > Court's Power to Punish

**HN5[⬇]  Sanctions, Contempt**

Tenn. Code Ann. § 29-9-102 provides that a court's power to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following: (1) The willful misbehavior of any person in the presence of the court, or so near

thereto as to obstruct the administration of justice; (2) The willful misbehavior of any of the officers of such courts, in their official transactions; (3) The willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts; (4) Abuse of, or unlawful interference with, the process or proceedings of the court; (5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them; or (6) Any other act or omission declared a contempt by law.

Civil
Procedure > Sanctions > Contempt > Civil Contempt

Criminal Law & Procedure > ... > Contempt > Proceedings > Court's Power to Punish

Civil
Procedure > Sanctions > Contempt > Criminal Contempt

### HN6[⬇] Contempt, Civil Contempt

The office of criminal contempt, as distinguished from civil contempt, is designed to serve the limited purpose of vindicating the authority of the court. In punishing contempt, the judiciary is sanctioning conduct that violates specific duties imposed by the court itself, arising directly from the parties' participation in judicial proceedings. Therefore, a criminal contempt proceeding raises an issue between the public and the accused. Criminal contempt is not to be used to benefit a contemnor's adversary; that is the office of civil contempt.

Civil
Procedure > Sanctions > Contempt > Criminal Contempt

Criminal Law & Procedure > ... > Contempt > Proceedings > Due Process

Criminal Law & Procedure > ... > Contempt > Proceedings > Summary Proceedings

### HN7[⬇] Contempt, Criminal Contempt

Criminal contempt is either direct or indirect. Tenn. Code Ann. § 29-9-102(1) (2000). Indirect contempt arises from acts committed out of the presence of the court, and cannot be punished unless the accused has been given the due process protections of notice and an opportunity to be heard. Direct contempt arises from acts committed in the presence of the court.

Civil
Procedure > Sanctions > Contempt > Criminal Contempt

Criminal Law & Procedure > ... > Contempt > Proceedings > Court's Power to Punish

Criminal Law & Procedure > ... > Contempt > Proceedings > Summary Proceedings

### HN8[⬇] Contempt, Criminal Contempt

Acts of willful disobedience or disrespectful conduct in the presence of a court pose the risk of obstructing the administration of justice; nevertheless, courts exercising summary contempt power must consider, in addition to the facial requirements of Tenn. R. Crim. P. 42(a), the nature of the conduct, its effect, if any, on the administration of justice, and the

overall purpose of Rule 42(a) proceedings when deciding whether it is appropriate to impose summary punishment. Because the imposition of summary punishment often dramatically departs from traditional concepts of due process, it should be used sparingly and reserved for circumstances where it is essential.

Civil Procedure > Sanctions > Contempt > Criminal Contempt

Criminal Law & Procedure > ... > Contempt > Proceedings > Court's Power to Punish

Criminal Law & Procedure > ... > Contempt > Proceedings > Summary Proceedings

**HN9[↓] Contempt, Criminal Contempt**

A trial judge has the authority to summarily punish direct contempt when necessary to protect the authority and integrity of the court and to prevent obstruction of the administration of justice; however, the court's summary contempt power may be invoked only when there is a need to act swiftly and firmly to prevent contumacious conduct from disrupting the orderly progress of a trial. Furthermore, although the determination of whether exceptional circumstances exist is generally left to the sound discretion of the trial court, in exercising its discretion, the trial court must consider the nature of the accused's conduct, the effect of the conduct on the administration of justice, and the overall purpose of Tenn. R. Crim. P. 42(a), in addition to its facial requirements.

Civil Procedure > Sanctions > Contempt > Criminal Contempt

Criminal Law & Procedure > ... > Contempt > Proceedings > Summary Proceedings

**HN10[↓] Contempt, Criminal Contempt**

Acts justifying a summary contempt proceeding include threatening the judge or disrupting a hearing or obstruction of court proceedings, and the use of violent or loud language or noises, or "turbulent" conduct that disrupts the proceedings. Additional acts justifying a summary contempt judgment include clamorous and violent language, and direct personal misbehavior, for example, loud speaking or making any noise in the courtroom or so near thereto as to interfere with the procedure of the court. In sum, to justify a summary contempt proceeding, the contumacious conduct must be willful and cause an actual obstruction of the administration of justice.

Civil Procedure > Sanctions > Contempt > Criminal Contempt

Criminal Law & Procedure > ... > Contempt > Proceedings > Summary Proceedings

**HN11[↓] Contempt, Criminal Contempt**

The need for summary contempt proceedings diminishes once a hearing is successfully concluded, and the preference for a due process hearing increases.

Civil Procedure > Sanctions > Contempt > Criminal Contempt

Criminal Law & Procedure > ... > Standards

of Review > Substantial Evidence > Sufficiency of Evidence

Criminal Law & Procedure > ... > Contempt > Proceedings > Summary Proceedings

**HN12[↓] Contempt, Criminal Contempt**

One charged with criminal contempt is presumed innocent until found guilty beyond a reasonable doubt. Once convicted of criminal contempt, a defendant loses the presumption of innocence and bears the burden of overcoming the presumption of guilt. On appeal following a finding of contempt, however, the party held in contempt must overcome the presumption of guilt by demonstrating that the evidence preponderates against the trial court's findings. When the sufficiency of the evidence in a criminal contempt case is raised on appeal, an appellate court must review the record to determine if the evidence in the record supports the finding of guilt beyond a reasonable doubt, and if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt, the appellate court is to set aside the finding of guilt. Tenn. R. App. P. 13(e).

Civil Procedure > Sanctions > Contempt > Criminal Contempt

Criminal Law & Procedure > ... > Contempt > Proceedings > Summary Proceedings

**HN13[↓] Contempt, Criminal Contempt**

Tenn. R. Crim. P. 42(a) governs the manner by which a judge may summarily punish a person who commits criminal contempt in the judge's presence.

Civil Procedure > Sanctions > Contempt > Criminal Contempt

Criminal Law & Procedure > ... > Contempt > Proceedings > Summary Proceedings

**HN14[↓] Contempt, Criminal Contempt**

See Tenn. R. Crim. P. 42(a).

Civil Procedure > Sanctions > Contempt > Criminal Contempt

Criminal Law & Procedure > ... > Contempt > Proceedings > Summary Proceedings

**HN15[↓] Contempt, Criminal Contempt**

A summary conviction of contempt must be in accordance with Tenn. R. Crim. P. 42(a), which contemplates a conviction based on knowledge of the trial judge obtained by him or her through his or her own senses, such as his or her own sight and hearing and in the court's presence or so near thereto to be considered in the presence of the court and without reference to extrinsic evidence.

Civil Procedure > Sanctions > Contempt > Criminal Contempt

Criminal Law & Procedure > ... > Contempt > Proceedings > Summary Proceedings

**HN16[↓] Contempt, Criminal Contempt**

Where actions occurred both in the presence

of a court and outside the presence of the court and where both must be established to support a conviction for contempt, a summary conviction is inappropriate under Tenn. R. Crim. P. 42(a), but instead, the requirements of Tenn. R. Crim. P. 42(b) must be met.

Civil Procedure > Sanctions > Contempt > Criminal Contempt

Criminal Law & Procedure > ... > Contempt > Proceedings > Summary Proceedings

**HN17[⬇]** Contempt, Criminal Contempt

Tenn. R. Crim. P. 42(a) contemplates a contempt conviction based on knowledge of a trial judge obtained by him or her through his or her own senses, such as his or her own sight and hearing and in the court's presence or so near thereto to be considered in the presence of the court and without reference to extrinsic evidence.

Civil Procedure > Sanctions > Contempt > Criminal Contempt

Criminal Law & Procedure > ... > Contempt > Proceedings > Summary Proceedings

**HN18[⬇]** Contempt, Criminal Contempt

A trial court may summarily punish someone for criminal contempt if the judge certifies that he or she saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. Tenn. R. Crim. P. 42(a). The Rule also mandates that the order of contempt shall recite the facts and shall be signed by the judge and entered of record. Tenn. R. Crim. P. 42(a).

**Counsel:** Richard L. Tennent, Nashville, Tennessee, for the appellant, Cynthia S. McKenzie.

Robert E. Cooper, Jr., Attorney General and Reporter, Joseph F. Whalen, Acting Solicitor General, and Warren Jasper, Senior Counsel, Nashville, Tennessee, for the appellee, State of Tennessee.

**Judges:** FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and BRANDON O. GIBSON, JJ., joined.

**Opinion by:** FRANK G. CLEMENT, JR.

## Opinion

An attorney, who was representing herself in her divorce action, appeals the trial court's finding that she was in direct contempt of court. She insists her conduct was not contemptuous and it did not disrupt the orderly progress of the hearing. She also challenges the procedure by which the trial court conducted the summary contempt hearing, asserting it was erroneously held hours after the successful completion of the hearing in which she was allegedly in contempt of court. She also challenges the sufficiency of the evidence and contends the trial court [*2] erred by basing its finding of contempt on extraneous evidence instead of relying solely on knowledge the judge obtained through his own senses, his sight and hearing. **HN1[⬆]** A trial court has the authority to punish direct contempt summarily but only in exceptional circumstances when necessary to "act swiftly and firmly to prevent contumacious conduct from disrupting the orderly progress" of a court proceeding. *Daniels v. Grimac*, 342 S.W.3d 511, 517 (Tenn. Ct. App. 2010); *State v.*

*Turner*, 914 S.W.2d 951, 956-57 (Tenn. Crim. App. 1995); *Robinson v. Air Draulics Eng'g Co.*, 214 Tenn. 30, 377 S.W.2d 908, 911-12 (Tenn. 1964). The transcript of the hearing reveals no exceptional circumstances and no conduct that obstructed the administration of justice. To the contrary, all issues at the hearing during which the alleged contemptuous conduct occurred were ruled upon, and the hearing concluded hours before the commencement of the summary contempt hearing. Based on these facts, Plaintiff was entitled to a hearing upon proper notice pursuant to the procedures of Tenn. R. Crim. P. 42(b). *See Grimac*, 342 S.W.3d at 517-18 (citing *Turner*, 914 S.W.2d at 959 n. 11). Therefore, the court erred by conducting a deferred summary contempt hearing. Furthermore, the trial court found the attorney in contempt, "in willful misbehavior in her official transactions by appearing in Court intoxicated," based on extrinsic evidence, urinalysis results, obtained after the hearing in question, not on conduct [*3] the court observed in the courtroom. HN2[↑] Tennessee Rule of Criminal Procedure 42(a), which governs the procedure by which a judge may summarily punish a person for criminal contempt, limits the evidence that may be considered to conduct the judge "saw or heard" in the courtroom. *See Wilson v. Wilson*, No. 03A01-9104-CH-00126, 1992 Tenn. App. LEXIS 715, 1992 WL 200971, at *4 (Tenn. Ct. App. Aug. 21, 1992). Because the finding of intoxication was based on extrinsic evidence, the criminal contempt judgment must be reversed. The record also reveals the extrinsic evidence, the test results the court relied upon, was unreliable, for it was only designed to test the "presence" of any alcohol for persons in recovery, not whether a person was "intoxicated." Therefore, the judgment of criminal contempt is reversed and the case is dismissed.

## OPINION

Cynthia McKenzie ("Plaintiff") is a licensed attorney who represented herself during an unusually contentious and protracted divorce for a couple married only two years with no children. The events giving rise to this appeal occurred on the morning of May 16, 2013, during a hearing on a motion filed by Plaintiff (the "morning hearing").[1] At the conclusion of the morning hearing, the trial judge dismissed Plaintiff's motion; however, pursuant to a sua sponte order, Plaintiff [*4] and her husband were required to undergo a urine drug test ("urinalysis") administered by the State Trial Court's Special Services Unit (the "Special Services Unit") and to return to the courtroom after the results were provided to the court. The trial court did not inform the parties of the reason for the urinalysis or why they were being required to return to court that afternoon.

The urinalysis results were provided to the court early that afternoon. Plaintiff's results were positive for amphetamines and indicated an alcohol level of .084 g/dL.[2] After allowing the parties "a few minutes" to review the results, they returned to the courtroom at which time the judge informed Plaintiff that the urinalysis results indicated that she "showed up [to the] morning [hearing] legally intoxicated," and "also under the influence of an amphetamine which, . . . is Adderall for

---

[1] The hearing was on Plaintiff's motion to have her husband found in contempt for allegedly violating a protective order. The trial court dismissed the motion due to Plaintiff's failure to comply with Tennessee Rule of Criminal Procedure Rule 42(b).

[2] As discussed in more detail later in this opinion, Plaintiff had a valid prescription for a medicine that contained amphetamines. Also as discussed later, the alcohol component of the test was designed to ascertain whether one had abstained from alcohol within the past 24 hours; it is not a reliable test to determine whether one is intoxicated or "under the influence" of alcohol, as that term applies to offenses for driving under the influence, pursuant to Tenn. Code Ann. § 55-10-401.

which you have no prescription."[3] The judge then stated that he wanted "to hear from Plaintiff." Plaintiff was represented by [*5] attorney Mark J. Downtown during this hearing (the "afternoon hearing") and the sentencing hearing that was held on May 30, 2014.

During the afternoon hearing, Plaintiff testified that she had a valid prescription for Adderall, but that she did not have the prescription with her. The trial court then asked Plaintiff to explain what he described as the high alcohol level in her system.

> THE COURT: Okay. Why would this show that you're under the -- under -- legally intoxicated in this court? Have you [*6] consumed alcohol in the last 12 hours -- or excuse me -- 12 hour -- let me say 14 hours prior to —
> [Plaintiff]: Prior to when I came to court?
> THE COURT: Yes.
> [Plaintiff]: I -- last night, I did drink some beer, but I don't know what time I went to sleep, but —
> THE COURT: Okay.
> [Plaintiff]: -- I would have to —
> THE COURT: All right. The Court —
> [Plaintiff]: -- 14 --
> THE COURT: All right. . . .

The court then called as its own witness John Holley, an employee of the Special Services Unit that administered the test, to verify the accuracy of the results. Mr. Holley testified that Plaintiff was escorted to the Special Services Unit where she provided a urine sample to Altavease McCluskey, a female employee of the Special Services Unit, and that he performed the urinalysis after receiving the sample from Ms. McCluskey. Although Mr. Holley's competence to opine on the reliability of such tests was not established, he testified that he was "very confident" in the accuracy of the urinalysis results.

During its direct examination of Mr. Holley, the court informed him that Plaintiff "indicated to the Court that she did not have her prescription [for Adderall] with her," and the court asked Mr. Holley [*7] if "No Prescription" would be marked in that situation. Mr. Holley testified that it was *his understanding* that Plaintiff told Ms. McCluskey that she did not have a prescription. Plaintiff objected to Mr. Holley's testimony on the ground of hearsay, and the court responded by stating, "All right. Let's get . . . Ms. McCluskey over here." While waiting on Ms. McCluskey to arrive, Plaintiff offered to late-file a copy of her prescription with the court; nevertheless, the court was adamant that it wanted to hear from Ms. McCluskey.

Ms. McCluskey testified that she completed Plaintiff's information sheet and obtained the urine sample from Plaintiff. Subsequently, the trial court asked Ms. McCluskey whether Plaintiff told her that she did not have her Adderall prescription with her, or whether Plaintiff told her that she did not have a prescription for Adderall. Ms. McCluskey testified that Plaintiff did not have the prescription with her at the time of testing. The court then stated, "based on that, then, we don't have any further questions."

At the conclusion of the afternoon hearing, the trial court found that Plaintiff was "intoxicated" during the morning hearing, that Plaintiff engaged [*8] in willful misbehavior in her official transactions by appearing in court intoxicated, and the court found her in direct contempt of court. The bench ruling reads in pertinent part:

> Ma'am, I do find that -- that this -- this screen is -- establishes that you showed

---

[3] Plaintiff's information sheet, which is signed by the party undergoing the urinalysis, required Plaintiff to "[l]ist any medications or drugs used within the past three weeks." Handwritten next to this statement is, "Adderall, No Prescription."

up earlier under the influence, .084. I do find, by a preponderance of the evidence, that this -- the testimony reflects the accuracy of this screen. You have no explanation for it, even given the opportunity to explain it. And pursuant, ma'am, to [Tenn. Code Ann.] § 29-9-102, I find that you are an officer of the court, and that you have engaged in willful misbehavior by showing up under the influence of alcohol. And, ma'am, I am going to find you in direct Contempt of Court pursuant to [Tenn. Code Ann. §] 29-9-101 and -- 102. I am going to reserve sentencing until May 30th, 2013.

The order of contempt entered on May 21, 2013, reads as follows:

> [T]he Court noticed the demeanor of [Plaintiff] was markedly different than what the Court had seen of [Plaintiff] in past hearings. [Plaintiff] was at one point argumentative with the Court. [Plaintiff] asked condescending and somewhat rhetorical questions of the Court. [Plaintiff] cast inappropriate allegations towards opposing counsel. [Plaintiff's] [*9] behavior forced the court to lecture her about proper behavior in Fourth Circuit Court.
>
> At the conclusion of the hearing of the preliminary matter, the Court, mainly out of concern for [Plaintiff's] behavior, ordered the parties to submit to a drug and alcohol screen . . . [Plaintiff] did state that she had a prescription for Adderall. The proof established that she told the person taking the sample that she had a prescription for Adderall. The Court believes [Plaintiff] regarding her Adderall prescription, which could explain the high level of amphetamines in her system.
> ***
> The Court recognizes that different people have different tolerances to alcohol. The Court also recognizes that there are no hard and fast rules to determining when a person is intoxicated. The Tennessee General Assembly has determined that a blood or breath alcohol level of .08 percent or more impairs a person to the extent that it is unlawful to operate a motor vehicle. *See* [Tenn. Code Ann.] § 55-10-401. The Court further recognizes that [Tenn. Code Ann.] § 55-10-401(2) limits the alcohol level to blood or breath levels. The test performed on [Plaintiff] was a urine test. Nonetheless, the Court has confidence in the screen results and has already found them accurate based [*10] on the testimony of Mr. Holley.
>
> Therefore, the Court finds, pursuant to [Tenn. Code Ann.] § 29-9-102(2), that [Plaintiff] was intoxicated in Court on May 16, 2013. Further, the Court finds that [Plaintiff], as an officer of the Court, engaged in willful misbehavior in her official transactions by appearing in Court intoxicated and as such is in direct contempt of court.

The trial court set the sentencing hearing on May 30, 2013. At the sentencing hearing, Mr. Downton, Plaintiff's counsel, submitted a letter from Dr. Stephen A. Montgomery, Director of Forensic Psychiatry at Vanderbilt University, to establish that the urinalysis results for alcohol, that of .084 g/dL of alcohol, which the trial court relied upon to find that Plaintiff was intoxicated in court, was not equivalent to blood or breath tests utilized to determine whether one is "under the influence of alcohol." As Dr. Montgomery's letter explained, the urinalysis results provided to the court *did not establish intoxication*; it merely established that Plaintiff had ingested alcohol "within the preceding 24 hours." (Emphasis added). The pertinent portion of the transcript from this hearing reads:

> [Mr. Downtown]: [The] finding of

intoxication was based on [*11] a urinalysis, which everybody in the scientific community and the courts in this state have found is insufficient basis to find somebody impaired. The test is designed only for abstinence programs.
COURT: So it's not good enough for probation violations?
[Mr. Downtown]: That's right, Your Honor. It's not good enough to prove impairment.
***
[Mr. Downtown]: For a probation violation, individuals are ordered to consume no alcohol. That's an abstinence program.

COURT: Let me tell you. This is not an opportunity for you to argue. There's a reviewing court that can address this issue. I'm going to stand by my order. I had an adequate explanation by Mr. Holly. That's why I called him up here, just to ensure that was an appropriate test. I'm allowing you to argue in regard to the punishment phase at this point. Otherwise, you know, you need to take it to my safety net, the three judges up in the Court of Appeals.

The trial court's order following the sentencing hearing stated that "the Court stands by its decision of May 16, 2013 that [Plaintiff] was in direct contempt of court because she was intoxicated in court on that date based on her behavior in court, the urine screen and the testimony of [*12] Mr. Holley[.]" The trial court assessed a $50 fine against Plaintiff.

Plaintiff filed a motion to alter or amend judgment in which she asserted, inter alia, that the trial court conducted a "pseudo-summary proceeding separate from the proceeding where the alleged contempt occurred, with neither notice to [Plaintiff] of the charges she faced or providing her a reasonable opportunity to defend herself." The motion was heard on July 25, 2013, at which time the trial court declined to hear oral argument and stated from the bench, "Motion to alter or amend. I have read the memorandum. I am inclined to stand by my order. So take it to the Court of Appeals. Quite frankly, I hope they reverse me on it, but I'm going to stand by my order at this point." The trial court's order entered on August 16, 2013, reiterated its bench ruling and denied Plaintiff's motion to alter or amend judgment. This appeal followed.

Plaintiff presents several issues for our review; however, we have determined that the dispositive issues are: 1) whether Plaintiff's conduct disrupted the orderly process of the morning hearing to such an extent to authorize the court to impose summary punishment; 2) whether the trial [*13] court erred by considering extrinsic evidence during the summary contempt hearing; and 3) whether the evidence that was admissible and reliable was insufficient to establish beyond a reasonable doubt that Plaintiff was intoxicated.[4]

## STANDARD OF REVIEW

*HN3*[⬆] A determination of contempt is within the sound discretion of the trial court, subject to the provisions of the law. *Robinson v. Air Draulics Eng'g Co.*, 377 S.W.2d 908, 912, 214

---

[4] The issues raised by Plaintiff read as follows:

(1) Does the evidence preponderate against the trial court's finding that Appellant was intoxicated in court?

(2) Is intoxication, which does not otherwise cause an "actual obstruction of justice," actionable pursuant to summary contempt?

(3) May a judge conduct a hearing without notice and hear extrinsic proof, while denying the defendant the opportunity to prepare or present a defense, when prosecuting summary contempt?

(4) Is the trial court judge's failure to certify that he personally witnessed the intoxication fatal?

(5) Did the trial court judge have the power and authority to order the parties to submit to drug screens?

Tenn. 30 (Tenn. 1964). Generally, the trial court's determination of contempt will not be disturbed absent an abuse of discretion. *Id.* A trial court abuses its discretion when it [*14] "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning or that causes an injustice to the party complaining." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). With respect to the trial court's determinations on questions of law, our review is de novo with no presumption of correctness. *Watkins, ex rel. Duncan v. Methodist Healthcare Sys.*, No. W2008-01349-COA-R3-CV, 2009 Tenn. App. LEXIS 210, 2009 WL 1328898, at *3 (Tenn. Ct. App. May 13, 2009) (citing *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000)).

## ANALYSIS

At common law, the court's power to punish contempt was "vast and undefined" which discretionary power carried with it the potential for abuse. *Black v. Blount*, 938 S.W.2d 394, 397 (Tenn. 1996). Therefore, specific statutory provisions were adopted to limit and define the conduct punishable by contempt. *Id.*

Today, **HN4**[↑] the court's contempt authority is governed by statute, and the procedures related to contempt proceedings are set forth in Tennessee Rule of Criminal Procedure 42. Specifically, our courts have the power to impose punishment for contempt of court for, inter alia, the willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice, and the willful misbehavior of any of the officers of such courts in their official transactions. *See* Tenn. Code Ann. § 29-9-102[5]; *see also* Tenn.

R. Crim. P. 42.

**HN6**[↑] The office of criminal contempt, as distinguished from civil contempt,[6] is "designed to serve the limited purpose of vindicating the authority of the court. In punishing contempt, the Judiciary is sanctioning conduct that violates specific duties imposed by the court itself, arising directly from the parties' participation in judicial proceedings." *Black*, 938 S.W.2d at 402 (quoting *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 800, 107 S. Ct. 2124, 95 L. Ed. 2d 740 (1987)); [*16] *see also Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). Therefore, a criminal contempt proceeding "raise[s] an issue between the public and the accused." *Id.* at 398.

**HN7**[↑] Criminal contempt is either direct or indirect. *Long v. McAllister-Long*, 221 S.W.3d 1, 12 n.11 (Tenn. Ct. App. 2006) (citing Tenn. Code Ann. § 29-9-102(1) (2000); *Black*, 938 S.W.2d at 398; *State v. Maddux*, 571 S.W.2d 819, 821 (Tenn. 1978)). "Indirect contempt

---

(1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice;

(2) The willful misbehavior of any of the officers of such courts, in their official transactions;

(3) The willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts;

(4) Abuse of, or unlawful interference with, the process or proceedings of the court;

(5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them; or

(6) Any other act or omission declared a contempt by law.

Tenn. Code Ann. § 29-9-102.

---

[5] **HN5**[↑] Tennessee Code Annotated § 29-9-102 provides that the court's power to "issue attachments, and inflict punishments for contempts [*15] of court, shall not be construed to extend to any except the following":

[6] Criminal contempt is not to be used to benefit the contemnor's adversary; that is the office of civil contempt. *See Overnite Transp. Co. v. Teamsters Local Union No. 480*, 172 S.W.3d 507, 510 (Tenn. 2005) (stating that a civil contempt action is generally brought to enforce private rights).

arises from acts committed out of the presence of the court, and cannot be punished unless the accused has been given the due process protections of notice and an opportunity to be heard." *Watkins*, 2009 Tenn. App. LEXIS 210, 2009 WL 1328898, at *4 (citing *Black*, 938 S.W.2d at 398). Direct contempt, which is at issue here, arises from acts committed in the presence of the court. *Black*, 938 S.W.2d at 398.

HN8[↑] Acts of willful disobedience or disrespectful conduct in the presence of the court pose the risk of obstructing the administration of justice; nevertheless, courts exercising summary contempt power must consider, "in addition to the facial requirements of Tenn. R. Crim. P. 42(a), the nature of the conduct, its effect, if any, on the administration of justice, and the overall purpose of Rule 42(a) proceedings" when deciding whether it is appropriate to impose summary punishment. *Turner*, 914 S.W.2d at 958. "[B]ecause the imposition of summary punishment often dramatically [*17] departs from traditional concepts of due process, it should be used sparingly and reserved for circumstances where it is essential." *Watkins*, 2009 Tenn. App. LEXIS 210, 2009 WL 1328898, at *5 (citing *Turner*, 914 S.W.2d at 957) (stating summary contempt powers should only be used in cases of "exceptional circumstances"); see also *Robinson*, 377 S.W.2d at 911-12 (stating summary punishment is only appropriate when "necessary to prevent actual, direct obstruction of, or interference with, the administration of justice.").

The trial court deemed it appropriate to depart from the traditional concepts of due process by conducting a summary contempt hearing; therefore, we must first determine whether the summary contempt hearing was necessary to prevent obstruction of or interference with the administration of justice. See *Robinson*, 377 S.W.2d at 911-12.

I. SUMMARY CONTEMPT PROCEEDINGS

HN9[↑] A trial judge has the authority to summarily punish direct contempt when necessary to protect the authority and integrity of the court and to prevent obstruction of the administration of justice; however, the court's summary contempt power may be invoked only when there is a need to "act swiftly and firmly to prevent contumacious conduct from disrupting the orderly progress of a . . . trial." *Watkins*, 2009 Tenn. App. LEXIS 210, 2009 WL 1328898, at *5 (citing *Turner*, 914 S.W.2d 951, 956 (Tenn. Crim. App. 1995) (quoting *United States v. Wilson*, 421 U.S. 309, 319, 95 S. Ct. 1802, 44 L. Ed. 2d 186 (1975)). Furthermore, although the determination [*18] of whether exceptional circumstances exist is generally left to the sound discretion of the trial court, in exercising its discretion, the trial court must consider the nature of the accused's conduct, the effect of the conduct on the administration of justice, and the overall purpose of Tennessee Rule of Criminal Procedure 42(a), in addition to its facial requirements. See *Grimac*, 342 S.W.3d at 518 (quoting *Watkins*, 2009 Tenn. App. LEXIS 210, 2009 WL 1328898, at *4-6 (citing *Turner*, 914 S.W.2d at 957-58)).

HN10[↑] Acts justifying a summary contempt proceeding include "threatening the judge or disrupting a hearing or obstruction of court proceedings," and the use of "violent or loud language or noises," or "turbulent" conduct that disrupts the proceedings. *Watkins*, 2009 Tenn. App. LEXIS 210, 2009 WL 1328898, at *6 (citing *Turner*, 914 S.W.2d at 957) (quoting *Harris v. United States*, 382 U.S. 162, 164, 86 S. Ct. 352, 15 L. Ed. 2d 240 (1965)). Additional acts justifying a summary contempt judgment include "clamorous and violent language," and "direct personal misbehavior, for example, loud speaking or making any noise in the courtroom or so near thereto as to interfere with the

procedure of the court." *Turner*, 914 S.W.2d at 957 (citations omitted). In sum, to justify a summary contempt proceeding, the contumacious conduct must be willful and cause an "*actual obstruction of the administration of justice.*" *Id*. at 956 (citing *Robinson*, 377 S.W.2d at 911-12) (emphasis added).

## II. OBSTRUCTION OF COURT PROCEEDINGS

The transcript of the morning hearing reveals no indication that [*19] Plaintiff's conduct obstructed the court proceedings in a fashion that constitutes exceptional circumstances. To the contrary, after being duly admonished, Plaintiff respectfully and articulately argued her position as to why her motion for criminal contempt against her husband should not be dismissed. The trial judge, however, determined that Plaintiff's motion needed to be more specific, dismissed the motion, and granted Plaintiff time to amend.

Moreover, it was not until the morning hearing was concluded that the court ordered both parties to submit to a drug and alcohol screen and to return to court thereafter. Because the trial court found it unnecessary to act "swiftly and firmly" to prevent misconduct, there was no justification to invoke the court's summary contempt powers. *See Grimac*, 342 S.W.3d at 517; *Watkins*, 2009 Tenn. App. LEXIS 210, 2009 WL 1328898, at *5; *Turner*, 914 S.W.2d at 956-57; *Robinson*, 377 S.W.2d at 911-12.

It is also significant that the court ordered the urinalysis not due to Plaintiff obstructing the morning hearing, but "out of concern" for Plaintiff. With respect to the trial court's observations of the conduct during the morning hearing, the contempt order reads in pertinent part:

> [T]he Court noticed the demeanor of [Plaintiff] was markedly different than what the Court had seen of [Plaintiff] in [*20] past hearings. [Plaintiff] was at one point argumentative with the Court. [Plaintiff] asked condescending and somewhat rhetorical questions of the Court. [Plaintiff] cast inappropriate allegations towards opposing counsel. [Plaintiff's] behavior forced the court to lecture her about proper behavior in Fourth Circuit Court.
>
> *At the conclusion of the hearing of the preliminary matter, the Court, mainly out of concern for [Plaintiff's] behavior, ordered the parties to submit to a drug and alcohol screen*[.]

(Emphasis added).

As for being argumentative and asking condescending and somewhat rhetorical questions of the court, our review of the transcript supports these findings, but only to a degree. More importantly, we are unable to conclude that Plaintiff's remarks and questions constituted willful misconduct or contemptuous conduct. Relevant portions of the transcript from the morning hearing read as follows:

> THE COURT: . . . in the interest of judicial economy -- you know, I thought I made it clear to everybody this is a two-year marriage. Isn't it two years before y'all separated? Wasn't it a two-year marriage?
> [Plaintiff]: Before he shot at me? Yes, I think that is correct.
>
> THE COURT: Let's [*21] get one thing straight, Ms. McKenzie. I don't want you to editorialize. Okay? You're representing yourself and you have the right to, but I'm not going to tolerate you interjecting your emotion into this as counsel of record. Okay? You're going to act professional.
> Now, with that said, I have spent more time on this case in the last four or five months, outside of a trial, than any other case that I've got, out of all of the almost 3,100, more time on this case in Orders of Protection

and motion hearings and everything else. You know, I don't know what the deal is here. I have some suspicions. But be that as it may you know, I don't think that we need to try this two places.

Following this admonition, Plaintiff respectfully stated why her motion should not be dismissed. After hearing from both parties, the trial judge determined that the facts relied upon by Plaintiff needed to be more specific to comply with Tenn. R. Crim. P. 42(b) and denied the motion. Immediately thereafter, the following colloquy ensued:

> [Husband's Counsel]: Your Honor, there's one other issue. I think we're meeting with Jack Norman as soon as he's available. There's one other issue. I filed late yesterday afternoon a motion to quash some [*22] subpoenas. Ms. McKenzie's office notified me midday yesterday --
> THE COURT: I mean, what you do is you file a motion to quash; everything is stayed until I hear the motion to quash.
> [Husband's Counsel]: Thank you.
> [Plaintiff]: I told him that there was no need to do that. My office was working with his office. That's another frivolous motion. Did you get my e-mail?
> [Husband's Counsel]: No. When?
> [Plaintiff]: Yesterday when I got your motion.
>
> THE COURT: Ms. McKenzie, let me tell you, we don't use the term -- I make the decision on whether a motion is frivolous, not you. I don't know how you practice law, but if you're going to represent yourself in this court, you're not going to throw an allegation -- you can argue to me it's frivolous, but you're not going to throw at [Husband's counsel] that something is frivolous. I'm not going to tolerate -
> [Plaintiff]: I was talking to you, Your Honor.
> THE COURT: -- that. Huh?
> [Plaintiff]: I was talking to you.
> THE COURT: Well, you were looking at him when you said it. If you're going to represent yourself, you're going to behave like a professional.
> [Plaintiff]: So saying the word "frivolous" is unprofessional?
>
> THE COURT: No. Ms. McKenzie, I'm not saying [*23] that. I'm saying you're representing yourself in this matter -
> [Plaintiff]: Right.
> THE COURT: - and part of the problem in this case is your emotion. You're not thinking like a professional. You're acting like a scorned litigant.
> [Plaintiff]: I'm sorry, Your Honor, I don't know - could you be specific about what I've done?
> THE COURT: No, I'm not going to be specific. Sit there and be quiet. All right? You are beginning to be the biggest part of the problem in this case, representing yourself. And you know what the saying is: Representing yourself, you've got a fool for your client. And I am beginning to see that that really has true meaning in this case. I strongly recommend, ma'am, you get new counsel. You've already had some of the best lawyers in Nashville.
> [Plaintiff]: I represent myself, Your Honor.
> THE COURT: All right. Then you're going to be held accountable. Your behavior in this court is going to be professional, and you're going to treat Mr. Williams with respect whether you like him or not. He treats you with respect, at least in this courtroom he does. And I will not tolerate the behavior. And I want both of these parties to go for a drug screen right now.
>
> [Husband's Counsel]: [*24] Thank you, Your Honor.
> THE COURT: I'm preparing an order, and you'll be escorted over to have a drug screen.

While it is reasonable to conclude that Plaintiff may have been argumentative or that she asked rhetorical questions, the record fails to support the conclusion that Plaintiff caused an *actual obstruction of the administration of justice* during the morning hearing.[7] *Turner*, 914 S.W.2d at 956; *Robinson*, 377 S.W.2d at 911-12. This conclusion is supported by the fact that the trial court delayed holding a summary contempt proceeding until later in the day, hours after the morning hearing had been concluded, which constitutes an implicit finding by the trial court that *immediate action* was not necessary to protect the authority and integrity of the court and to prevent obstruction of the administration of justice. *See Grimac*, 342 S.W.3d at 517 (citing *Turner*, 914 S.W.2d at 956). Moreover, the fact the court deferred the contempt hearing until after the morning hearing concluded is also significant because HN11[↑] the need for summary proceedings diminishes once a hearing is successfully concluded and the preference for a due process hearing increases. *See id.* at 517-18 (citing *Turner*, 914 S.W.2d at 959 n.11).

There being no "exceptional circumstance" and no need to "act swiftly and firmly to prevent contumacious conduct from disrupting the orderly progress of a [court proceeding]," the court was without authority to conduct a summary contempt proceeding, moreover, a deferred summary contempt proceeding. *Id.*; *Turner*, 914 S.W.2d at 956; *Wilson*, 421 U.S. at 319. Instead, Plaintiff was entitled to due process in the form of a formal hearing upon proper notice pursuant to the procedures [*26] of Tenn. R. Crim. P. 42(b). *See id.*; *see also Turner*, 914 S.W.2d at 957.

### III. SUFFICIENCY OF THE EVIDENCE

HN12[↑] One charged with criminal contempt is presumed innocent until found guilty beyond a reasonable doubt. *Id.* Once convicted of criminal contempt, the defendant loses the presumption of innocence and bears the burden of overcoming the presumption of guilt. *See Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). On appeal following a finding of contempt, however, the party held in contempt must overcome the presumption of guilt by demonstrating that the evidence preponderates against the trial court's findings. *Robinson*, 377 S.W.2d at 912. When the sufficiency of the evidence in a criminal contempt case is raised on appeal, this court must review the record to determine if the evidence in the record supports the finding of guilt beyond a reasonable doubt, and "if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt," we are to set aside the finding of guilt. *See* Tenn. R. App. P. 13(e).

Plaintiff challenges the sufficiency of the evidence on several grounds. She insists the trial court erred by making its decision based on extrinsic evidence, that being the urinalysis results, because extrinsic evidence may not be considered in a summary contempt proceeding. She also insists [*27] the test results are not competent proof of intoxication, for the test is designed to detect the presence

---

[7] *State v. Turner* provides an example of an attorney's conduct rising to the level of invoking summary contempt procedures.

> [T]he record [*25] reflects counsel's distemper in response to a ruling of the trial judge and his apparent *refusal to gain control of himself*. It further reflects an *escalating confrontation* in which *appellant had to be physically removed* from the courtroom. The conduct resulted *not only in the temporary delay* of the trial for purposes of removing the jury, *but also in the mistrial of the proceedings*. We have no difficulty concluding that appellant's conduct was willful and that its effect obstructed the administration of justice. Given this *direct confrontation with the trial judge* and this *display of boisterous conduct which required removal* from the courtroom, we find that the trial court did not abuse its discretion in invoking summary contempt procedures.

*Turner*, 914 S.W.2d at 961 (emphasis added).

of alcohol (for abstinence programs) and not whether the subject is "intoxicated." She also insists the evidence preponderates against the finding that she was intoxicated.

The State, which is the appellee in this appeal, contends that the trial court did not commit reversible error in relying upon the urinalysis to "confirm its suspicions." It also contends the evidence is sufficient to support the court's decision without considering the urinalysis results and other extrinsic evidence.

A. EXTRINSIC EVIDENCE

We shall first consider Plaintiff's challenge to the introduction of extrinsic evidence in a summary contempt hearing.[8] HN13[↑] Tenn. R. Crim. P. 42(a) governs the manner by which a judge may summarily punish a person who commits criminal contempt in the judge's presence, and the rule states unequivocally:

> HN14[↑] (a) Summary Disposition. A criminal contempt may be punished summarily *if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court*. The order of contempt shall recite the facts and shall be signed by the judge and entered of [*28] record.

(Emphasis added).

We have previously considered whether a judge could entertain extrinsic evidence in addition to what the judge saw and heard during the contemptuous proceeding in *Wilson v. Wilson*, No. 03A01-9104-CH-00126, 1992 Tenn. App. LEXIS 715, 1992 WL 200971 (Tenn. Ct. App. Aug. 21, 1992). In that case, Chancellor Richard Johnson found attorney Thomas Cowan in contempt of court following a summary contempt hearing. 1992 Tenn. App. LEXIS 715, [WL] at *1. The material facts of that case were that Mr. Cowan was employed by Karen Wilson to represent her in her divorce. *Id.* In furtherance of his duties, Mr. Cowan obtained a temporary restraining order which restrained Ms. Wilson's husband from "conveying, transferring, encumbering, alienating, or interfering with her [the plaintiff's] exclusive use and possession of the household goods, personal property, and 1991 BMW 318-I automobile, in any way or fashion." *Id.* However, during the course of the divorce proceedings, the trial judge learned that when Mr. Cowan obtained the temporary restraining order from Circuit Court Judge Lynn Brown, he knew his client was not in possession of the BMW. [*29] *Id.* At the conclusion of the hearing, the chancellor took a recess and required the court reporter and attorneys to remain until Judge Brown arrived; following a short recess, Judge Brown arrived, and testimony was elicited from him. *Id.* Upon the conclusion of Judge Brown's testimony, Chancellor Johnson found Mr. Cowan to be in contempt of court stating in the record as follows:

> This court finds that a reasonable reading of the complaint which Mr. Cowan drafted and had his client sign is that his client had possession of the BMW automobile. This court further finds that the affidavit of the plaintiff, Mr. Cowan's client, the affidavit having been drafted by . . . Mr. Cowan, a reasonable reading of same, would lead the Court to believe as Judge Brown was led to believe on both the complaint and the affidavit, that, in fact, Mr. Cowan's client had possession of the BMW automobile.
>
> This court further finds that a reasonable reading of the temporary restraining order which Mr. Cowan drafted and presented to Judge Brown would lead a reasonable person to believe that Mr. Cowan's client had possession of the 1991 BMW

---

[8] Black's Law Dictionary defines "extrinsic" as being "[f]rom outside sources; of or relating to outside matters." Black's Law Dictionary (9th ed. 2009).

automobile and the-one of the purposes of the restraining order was to prohibit [*30] the defendant from interfering with the plaintiff's possession of said automobile.

This court further finds by the clear undisputed evidence in this case today, that in fact, Mr. Cowan's client did not have possession of this automobile. *This court finds that Mr. Cowan in the complaint, the affidavit and the restraining order purposefully, intentionally mislead the court.* That in fact, this court finds that Mr. Cowan lied to Judge Brown about this client having possession of the BMW automobile. This court finds that today Mr. Cowan lied to me about what he told Judge Brown and this court finds that as a result of that that Mr. Cowan is in contempt of court. That Mr. Cowan's willful behavior in the presence of the court or so near thereto, has obstructed the administration of justice. That Mr. Cowan is guilty of willful misbehavior as an officer of the court in his official capacity, in his official transactions; therefore, this court sentences Mr. Cowan to ten days in the county jail.

1992 Tenn. App. LEXIS 715, [WL] at *1-2 (emphasis added).

Mr. Cowan appealed, presenting the following issue for this court's consideration:

> Is the evidence sufficient to show appellant guilty beyond a reasonable doubt of making false or misleading [*31] statements to Chancellor Richard Johnson on January 31, 1992, when Chancellor Johnson make (sic) inquiry of appellant concerning appellant's statements to Criminal Judge Lynn Brown, January 29, 1992, when appellant presented a temporary restraining order for issuance?

In furtherance of this issue, Mr. Cowan contended the trial court erred in considering extrinsic evidence, that being what he allegedly told Judge Brown when he obtained the temporary restraining order.

In our decision that followed, we held that *HN15*[↑] a summary conviction of contempt must be in accordance with Tenn. R. Crim. P. 42(a), which "contemplates a conviction *based on knowledge of the trial judge obtained by him through his own senses, such as his own sight and hearing and in the court's presence* or so near thereto to be considered in the presence of the court and without reference to extrinsic evidence." 1992 Tenn. App. LEXIS 715, [WL] at *4 (emphasis added). Following our review of what Chancellor Johnson considered in summarily holding Mr. Cowan in criminal contempt, we concluded that the trial court's consideration of what was said to Judge Brown out of the presence of Chancellor Johnson was not permitted under Tenn. R. Crim. P. 42(a).

> *We find this action of [Chancellor Johnson] to be impermissible [*32] under Rule 42, [Tenn. R. Crim. P.], because a determination of the truthfulness or falsity of the statements cannot be made without reference to Judge Brown's testimony. Thus, HN16[↑] where, as here, actions occurred both in the presence of the court and outside the presence of the court and where both must be established to support a conviction for contempt, a summary conviction is inappropriate under Rule 42(a) [Tenn. R. Crim. P.], but instead, the requirements of Rule 42(b) must be met. Accordingly, we reverse the judgment of the trial court.*

1992 Tenn. App. LEXIS 715, [WL] at *4 (emphasis added).

We find the foregoing analysis persuasive and agree that *HN17*[↑] Tenn. R. Crim. P. 42(a) "contemplates a conviction *based on knowledge of the trial judge obtained by him through his own senses, such as his own sight*

*and hearing and in the court's presence* or so near thereto to be considered in the presence of the court and without reference to extrinsic evidence." *Id*. Therefore, the trial court was not permitted to consider extraneous evidence, which excludes not only the urinalysis results but also the testimony of Mr. Holley and Ms. McCluskey.

Although we have excluded the test results as extrinsic evidence, it is important to note that the test was not competent evidence for determining [*33] whether someone is intoxicated. To the contrary, the alcohol component of the test is designed for abstinence programs to detect the presence of any alcohol, not to determine whether one is intoxicated. As Dr. Montgomery established, the urinalysis results of .084 g/dL of alcohol, which the trial court relied upon to find that Plaintiff was intoxicated in court, was not equivalent to blood or breath tests utilized to determine whether one is "under the influence of alcohol." Thus, even if admissible, this test would be wholly insufficient to prove that Plaintiff was intoxicated during the morning hearing; it would merely establish that she had consumed some amount of alcohol within the twenty-four hour period preceding the administration of the test.

B. CONDUCT THE TRIAL COURT SAW OR HEARD

As discussed earlier, **HN18**[↑] the trial court may summarily punish someone for criminal contempt "*if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court*." Tenn. R. Crim. P. 42(a) (emphasis added). The rule also mandates that "the order of contempt shall recite the facts" and shall be signed by the judge and entered of record. *Id*.

The only facts [*34] recited in the contempt order entered on May 21, 2013, that do not pertain to the inadmissible extrinsic evidence appear in the first and last paragraphs, which read:

> [T]he Court noticed the demeanor of [Plaintiff] was markedly different than what the Court had seen of [Plaintiff] in past hearings. [Plaintiff] was at one point argumentative with the Court. [Plaintiff] asked condescending and somewhat rhetorical questions of the Court. [Plaintiff] cast inappropriate allegations towards opposing counsel. [Plaintiff's] behavior forced the court to lecture her about proper behavior in Fourth Circuit Court.
> * * *
>
> Therefore, the Court finds, pursuant to [Tenn. Code Ann.] § 29-9-102(2), that [Plaintiff] was intoxicated in Court on May 16, 2013. Further, the Court finds that [Plaintiff], as an officer of the Court, engaged in willful misbehavior in her official transactions by appearing in Court intoxicated and as such is in direct contempt of court.

Significantly, none of the facts recited by the trial court in the contempt order are the type of facts that are generally regarded as indicators of intoxication, e.g., bloodshot or dilated eyes, slurring of speech, stumbling or unsteadiness on one's feet, or the smell of alcohol. [*35] Contrary to exhibiting any signs of intoxication, Plaintiff insists that the transcript of the morning hearing provides conclusive proof that she was sober. Having read and re-read the relevant portions of transcript from the morning, which are quoted earlier in this opinion on pages 11 - 13, we find the evidence preponderates against a finding that Plaintiff was intoxicated. Furthermore, after being admonished by the court for being argumentative and asking rhetorical questions, Plaintiff's demeanor clearly improved. We find this significant, for had she been intoxicated, such an admonishment would have likely had little effect on her sobriety; however, it is

indicative of the fact that Plaintiff may have been unnecessarily argumentative or assertive in seeking to have her husband held in contempt.

Returning to the contempt order in which the court is required to "recite the facts" upon which the court relies to find a party in contempt, the only observations of Plaintiff's behavior certified by the judge as being the operative facts are that her behavior was "markedly different" than he had seen in past hearings; that Plaintiff was "at one point argumentative"; asked "condescending [*36] and somewhat rhetorical questions" of the court; and that she cast "inappropriate allegations towards opposing counsel." Admittedly, the descriptions of Plaintiff's conduct are not among the practices of successful lawyers appreciated by judges in the article by Honorable Michael D. Lyon, *Practices of Successful Lawyers Appreciated by Trial Judges*, Utah B.J., April 2003, at 28; nevertheless, Plaintiff's conduct was not contemptuous.

Considering the evidence in the light most favorable to the State, we have concluded that the evidence is insufficient to permit any trier of fact to find beyond a reasonable doubt that Plaintiff, as an officer of the court, was intoxicated or otherwise engaged in willful misbehavior in her official transactions. Therefore, for the above reasons, the criminal contempt judgment is reversed.

IN CONCLUSION

The judgment of the trial court is reversed and the contempt charges are dismissed. Costs of appeal are assessed to the State of Tennessee.

FRANK G. CLEMENT, JR., JUDGE

End of Document