UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| HANNAH ASHBROOK, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | 1:24-cv-165 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| MEIGS COUNTY, TENNESSEE, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |
| ) | |

## **M E M O R A N D U M**

Before the Court is a motion to dismiss Defendant Casey Stokes on the grounds of judicial immunity. (Doc. 36.) Plaintiff has responded. (Doc. 38.) Defendant Stokes has replied. (Doc. 41.) This matter is now ripe for review.

**I.   BACKGROUND**[1]

On May 11, 2023, Plaintiff Hannah Ashbrook accompanied her boyfriend, Steven Kelsey, to the Meigs County General Sessions Court where Defendant, Meigs County General Sessions Court Judge Casey Stokes, presided as judge. (Doc. 38 at 4.) Plaintiff and her boyfriend arrived at the courthouse around 8:30 AM (Doc. 39 at Camera 11, Part 1, 8:30:01) and entered the courtroom at 8:54 AM (*id*. at 8:54:32). At 9:09 AM, Defendant Stokes entered the courtroom through the main public hallway. (*Id*. at Camera 10, Part 1, 9:09:25.) Defendant Stokes was wearing jeans and a polo shirt rather than a judicial robe. (*See id*.)

Plaintiff and her boyfriend exited the courtroom for the first time at 9:37 AM and are seen talking to a person who appears to be the boyfriend's lawyer. (Doc. 39 at Camera 9, Part 1,

---

[1] This summary of the facts accepts all the factual allegations in Plaintiff's complaint as true. *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

9:37:24.) Plaintiff reentered the courtroom at 9:43 AM. (*Id*. at 9:43:46.) Plaintiff and her boyfriend exited the courtroom for the last time over an hour later at 10:48 AM. (*Id*. at Camera 11, Part 2, 10:48:02.) Plaintiff denies that she engaged in inappropriate conduct while in Defendant Stokes' courtroom. (Doc. 38 at 6.)

As part of a bond condition, Defendant Stokes ordered Plaintiff's boyfriend to a urine drug screen. (Doc. 38 at 5.) Following the hearing, Plaintiff waited some time with her boyfriend in the hallway but she eventually left the courthouse at 11:06 AM. (Doc. 39 at Camera 11, Part 2, 11:06:27.) Plaintiff contends she left the premises without limitation and "no one sought to restrain her, counsel her, admonish her, or detain her." (Doc. 38. at 15.)

Less than twenty minutes later, at 11:25 AM, Plaintiff returned to the Meigs County Courthouse to retrieve her boyfriend's phone. (Doc. 39 at Camera 11, Part 2, 11:25:05.) This was only one minute after Plaintiff's boyfriend was placed in custody for failing to comply with his bond conditions. (*Id*. at 11:23:25; Doc. 38 at 5.) When she returned to the courthouse hallway, she "approached an officer to ask where [her boyfriend] was." (Doc. 38 at 8.) Defendant Stokes, who was standing near the hallway, then ordered officers to detain and drug test her. (Doc. 1 ¶ 29; Doc. 39 at Camera 10, Part 2, 11:25:19.) According to Plaintiff, without probable cause or reason, Plaintiff was forced to submit to the drug test. (Doc. 1 ¶ 29.) Defendant Stokes was not wearing a judicial robe at this time. (*Id*. ¶ 28; Doc. 39 at Camera 10, Part 2, 11:25:19.)

Plaintiff asserts she was taken into the bathroom and given thirty seconds to give a urine sample. (Doc. 1 ¶¶ 37–38.) Based on a verbal announcement that Plaintiff was positive for drugs, Plaintiff was handcuffed and arrested. (*Id*. ¶ 43.) Defendant Stokes then "*sua sponte* entered [a] Judgment . . . stating that Plaintiff was in criminal contempt and ordered that she be incarcerated in the Meigs County Jail for a period of ten (10) days." (*Id*. ¶ 47.) The reason for her confinement

was listed as "PRE TRIAL MISDEMEANOR" in the Meigs County Sheriff's Department's Booking Report. (*Id*. ¶¶ 53–54.) Plaintiff was incarcerated in Meigs County Jail for ten consecutive days. (*Id*. ¶ 55.)

During the morning of May 11, 2023, the courthouse footage shows Defendant Stokes standing right outside the courtroom, which is adjacent to the hallway, multiple times. (*See, e.g.*, Doc. 39 at Camera 10, Part 2 at 11:00–11:20; *id*. at Camera 11, Part 2, 11:02–11:09.) This area was visible from the hallway, and Plaintiff walked past Defendant Stokes while he was standing there. (*Id*. at Camera 11, Part 2, 11:05:20.) The footage also shows Defendant Stokes walking in the public courthouse hallway multiple times that morning. (*See, e.g., id*. at Camera 9, Part 1, at 8:54:10; *id*. at Camera 9, Part 2, at 10:39:36, 10:45:34, 11:02:11; *id*. at Camera 11, Part 1, 9:53:40, 10:05; *id*. at Camera 11, Part 2 at 10:39:36–10:41:13, 10:44:37, 10:58:45–11:00:03.) Plaintiff passed by Defendant Stokes in the hallway. (*Id*. at Camera 9, Part 1, at 9:54:37; *id*. at Camera 11, Part 1, at 9:54:37.) At no time was Defendant Stokes wearing a judicial robe.

Based on these allegations, Plaintiff Hannah Ashbrook filed a complaint against Meigs County, Tennessee, Judge Casey Stokes, Sheriff Jackie Melton, Probation Officer Carol Petit, and Deputy Ben Christian on May 8, 2024.[2] (Doc. 1.) Plaintiff invoked 42 U.S.C. §§ 1983 and 1988, constitutional law, and Tennessee state law as the legal basis for her complaint. (*Id*. at 1–2.) She asserts claims for false arrest, unlawful seizure, excessive force, denial of the right to notice and counsel, denial of due process, false arrest, and false imprisonment. (*Id.* at 11–29.) Defendants answered the complaint and denied the allegations. (Doc. 12.) Defendant Stokes now moves the

---

[2] The parties stipulated that Plaintiff's action against Jackie Melton, Carol Petit, and Ben Christian and the official capacity action against Casey Stokes be dismissed as redundant since Meigs County, Tennessee is also a party Defendant. (Doc. 40.)

3

Court to dismiss the case against him with prejudice on the grounds of judicial immunity. (Doc. 36.)

II.     **STANDARD OF REVIEW**

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss under Rule 12(b)(6), a court must accept all the factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Hill v. Blue Cross & Blue Shield of Mich.*, 49 F.3d 710, 716 (6th Cir. 2005)). The court is not, however, bound to accept bare assertions of legal conclusions as true. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In deciding a motion under Rule 12(b)(6), a court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Sixth Circuit has taken a "liberal view" of matters falling within the pleadings for purposes of Rule 12(b)(6). *Armengau v. Cline*, 7 F. App'x 336, 334 (6th Cir. 2001). "If extrinsic materials merely 'fill in the contours and details' of a complaint, they add nothing new and may be considered without converting the motion to one for summary judgment." *Id*. Here, the Court will review the courthouse footage without converting the motion to dismiss into a motion for summary judgment, as it tends to fill in details of allegations within Plaintiff's complaint. *See id.*; *see, e.g., Rodriguez v. Providence Cmty. Corr., Inc.,* 191 F. Supp. 3d 758, 763 (M.D. Tenn. 2016).

## III.   DISCUSSION

Defendant Stokes argues that Plaintiff's allegations, even if true, are barred by the doctrine of judicial immunity. (Doc. 37 at 7.)

"Judicial officers generally are absolutely immune from civil suits for monetary damages under § 1983 for their judicial actions." *Cooper v. Parrish*, 203 F.3d 937, 944 (6th Cir. 2000) (citing *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991)); *see also Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012) ("It is well-established that judges enjoy judicial immunity from suits arising out of the performance of their judicial functions." (quoting *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004))). "While this doctrine may seem unfair to an individual litigant seeking to vindicate his or her rights against a judge, it ultimately protects the public at large because there is 'a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability.'" *Orta v. Repp*, No. 3:22-cv-00359, 2022 WL 17617308, at *3 (N.D. Ohio Dec. 13, 2022), *aff'd*. No. 23-3034, 2023

WL 5666161 (6th Cir. Sept. 1, 2023) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997)). "[J]udicial officers should be free to make controversial decisions and act upon their convictions without fear of personal liability." *Cooper*, 203 F.3d at 944 (citing *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978)); *see also Mireles*, 502 U.S. at 10. "Judicial immunity exists even where a judge acts corruptly or with malice." *Leech*, 689 F.3d at 542 (citations omitted).

While absolute judicial immunity is generally protective of judicial officers, it does not apply in two circumstances. *Orta v. Repp*, No. 23-3034, 2023 WL 5666161, at *2 (6th Cir. Sept. 1, 2023) (citing *Mireles*, 502 U.S. at 11). First, judicial immunity does not apply to "actions not taken in the judge's judicial capacity." *Mireles*, 502 U.S. at 11 (citations omitted). Second, judicial immunity does not apply to "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 12 (citations omitted). As the party asserting judicial immunity, Defendant Stokes bears the burden of establishing that it exists. *See Leech*, 689 F.3d at 542 (quoting *Brookings*, 389 F.3d at 617).

Defendant Stokes moves the Court to dismiss the case against him, arguing that he is entitled to absolute immunity pursuant to the doctrine of judicial immunity. (Doc. 36 at 1.) The parties agree that Defendant Stokes is generally protected by the doctrine of judicial immunity. (*See* Doc. 38 at 11.) Plaintiff argues, however, that Defendant's conduct fell under the exceptions to the judicial immunity defense. (*Id.*) The Court will evaluate the two exceptions in turn.

### A. Whether Defendant Acted in the Absence of All Jurisdiction

In evaluating the defense of judicial immunity, the first question the Court addresses is whether Defendant Stokes had jurisdiction to act. *See Mireles*, 502 U.S. at 12. The Sixth Circuit has held that "where a court has *some* subject matter jurisdiction over the underlying legal actions," there is sufficient jurisdiction for immunity purposes. *Cooper*, 203 F.3d at 946 (emphasis in

original). The scope of the judge's jurisdiction is construed broadly. *Stump*, 435 U.S. at 356. Therefore, a judge only loses protection from immunity for actions that clearly fall outside of the boundaries of a judge's power. *Marchant v. Moore,* No. 3:09-cv-1218, 2010 WL 3872867, at *2 (M.D. Tenn. Sept. 28, 2010). A judge will not be deprived of immunity just because an action was taken in error or in excess of authority. *Mireles*, 502 U.S. at 12.

Here, Defendant Stokes bears the burden of showing he had at least "*some* subject matter jurisdiction over the underlying legal actions." *See Cooper*, 203 F.3d at 946. Defendant Stokes argues that he was the "presiding judicial officer in the General Sessions Court for Meigs County, Tennessee, and therefore all cases pending and other happenings in court fell totally within his jurisdiction." (Doc. 37 at 2.)

In response, Plaintiff contends that "[a]t the time the Plaintiff was wrongly seized by police at the direction of Defendant Stokes she was (1) not a party before the [c]ourt; (2) she was not a witness to a preceding pending before the [c]ourt, and (3) the [c]ourt was not conducting any proceeding." (Doc. 38 at 3.) Plaintiff explains that after her boyfriend's hearing ended, Plaintiff left the courthouse premises entirely. (*Id*. at 8.) She contends she left without limitation and "no one sought to restrain her, counsel her, admonish her, or detain her." (*Id*. at 15.) Shortly after, Plaintiff returned to retrieve her boyfriend's personal property. (*Id*. at 8, 15.) It was only then that Defendant Stokes ordered Plaintiff to be seized by officers in the hallway and forced to submit to a drug test. (*Id*. at 15.) For this reason, Plaintiff argues that when Plaintiff returned to the courthouse on a personal errand to collect her boyfriend's property, Defendant Stokes acted in the absence of all jurisdiction by "requiring a private citizen who is not before his [c]ourt to forcibly submit to a drug test . . . absent a bond condition or other order requiring negative drug tests." (*Id*. at 14.)

7

When evaluating the jurisdiction exception, courts must consider the judge's power to hear a particular case and the full scope of the judge's statutory judicial authority. *Marchant,* 2010 WL 3872867, at *2. In Tennessee, trial judges have broad discretion when it comes to management of their courtrooms. *See* Tenn. Code Ann. § 16-1-102 (2021) ("Every court has the power to: (1) Enforce order in its immediate presence, or as near thereto as is necessary to prevent interruption, disturbance, or hinderance to its proceedings."). Trial courts also have the authority to regulate the premises of the courthouse. *Sheppard v. Maxwell*, 384 U.S. 333, 358 (1966) ("The courtroom and courthouse premises are subject to the control of the court.")

Further, trial judges have the inherent discretionary power to punish for contempt in order to preserve the power and dignity of the court. *In re Brown*, 470 S.W.3d 433, 443 (Tenn. Ct. App. 2015) (quoting *Black v. Bount*, 938 S.W.2d. 394, 398 (Tenn. 1996)). This principle has been codified in Tennessee Code Annotated § 16-1-103, which states "[f]or the effectual exercise of its powers, every court is vested with the power to punish for contempt."

Here, Defendant Stokes had the general power to control the courthouse and hold individuals present there in contempt. *See* Tenn. Code Ann. § 16-1-103. Viewing the facts in the light most favorable to the Plaintiff, Plaintiff was never disruptive in front of Defendant Stokes and never received warnings for her behavior. (Doc. 1 ¶ 24; Doc. 38 at 13.) Nevertheless, whether Defendant Stokes used his power appropriately is not the relevant question. *See Mireles*, 502 U.S. at 12. "Even if we assume that Defendant [Stokes] acted in excess of his authority by detaining Plaintiff without probable cause or reasonable suspicion, Defendant did not act in the clear absence of jurisdiction because the power to detain was within the scope of his authority." *See Marchant*, 2010 WL 3872867, at *3 (finding a Tennessee state judge who ordered a spectator to take a drug test had jurisdiction for the purposes of judicial immunity even if he acted in excess of his

8

authority). Misapplication of the law is an act in excess of jurisdiction, not in absence of it. *See Stump*, 435 U.S. at 357 n.7 (citation omitted).

Moreover, the Court recognizes that Defendant Stokes may have been in error by summarily holding Plaintiff in contempt and sentencing her to jail instead of scheduling a hearing. *See* Tenn. R. Crim. Pro. 42; *In re Brown*, 470 S.W.3d at 445 (noting summary contempt powers should be used sparingly in exceptional circumstances because summary punishment "departs, often dramatically, from traditional notions of due process that are the hallmarks of criminal justice" (quotations and citation omitted)). The Court further recognizes that Defendant Stokes may have violated state procedural requirements by failing to specify the contemptuous conduct in the contempt judgment. *See* Tenn. R. Crim. Pro. 42. Although the exercise of his authority might have been "flawed by the commission of grave procedural errors," *see Stump*, 435 U.S. at 359, Defendant Stokes may still invoke the shield of absolute immunity because he had at least some subject matter jurisdiction. *See Cooper*, 203 F.3d at 946. Therefore, because Defendant Stokes was not acting in the absence of all jurisdiction, this exception to judicial immunity does not apply in this case. *See Mireles*, 502 U.S. at 12; *Marchant*, 2010 WL 3872867, at *3.

**B. Whether Defendant's Acts were Judicial**

The next question is whether Defendant's acts were judicial. *See Mireles*, 502 U.S. at 11. Drawing the line between judicial and nonjudicial acts can be difficult. *See Forrester v. White*, 484 U.S. 219, 227 (1988) ("Difficulties have arisen primarily in attempting to draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges."). Whether an act is judicial or nonjudicial depends "on 'the nature of the function performed, not the identity of the actor who performed it.'" *Barrett v. Harrington*, 130 F.3d 246, 257 (6th Cir. 1997) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)); *see*

*also Mireles*, 502 U.S. at 13.  First, courts should look to whether the action is a function that is normally performed by a judge.  *Stump*, 435 U.S. at 362.  Second, courts should look to "the expectations of the parties," including whether they were dealing with the judge in his judicial capacity.  *Id*.

In *Marchant v. Moore*, a Tennessee state court judge ordered a spectator in his courtroom to take a drug test despite not having any suspicion that he was under the influence.  2010 WL 3872867, at *1.  The plaintiff argued that the alleged actions were not judicial acts because "judges do not normally detain courtroom spectators for no reason and subject them to drug testing." *Id.* at *4.  The district court explained that this argument misconstrues the requirements of the exception laid out in *Stump*, stating:

> When examining whether the behavior is normally performed by a judge, a court must look at the general type of behavior that the judge was undertaking, rather than the specific actions a judge took in any particular case.  *See Mireles,* 502 U.S. at 12. Thus, the key inquiry here is not into the particulars of Defendant's behavior and whether or not it comported with the law; rather, the Court must consider whether the general nature and function of the act are acceptable.  *Id.*  As noted above, a sitting judge has substantial authority to control the behavior of those present in her courtroom.  *See, e.g., Cameron,* 38 F.3d at 271.  Therefore, because Defendant's behavior falls within a general category of behavior normally performed by a judge, the first prong of the *Stump* judicial behavior test is satisfied.

*Id.*

Similarly, in this case, Plaintiff argues that "instructing law enforcement to force a private citizen who is not before the court in any capacity and who is not engaged in outrageous conduct to submit to a drug test against the person's will is not a 'function normally performed by a judge.'" (Doc. 38 at 13 (quoting *Mireles*, 502 U.S. at 12).)  Plaintiff argues Defendant Stokes acted more like a "cop" than a judge.  (*Id*. at 11–12.)  As explained in *Marchant*, the Court need not inquire into the particulars of Defendant Stokes' behavior or whether it comported with the law.  *See* 2010

10

WL 3872867, at *4. Instead, the Court must consider the general type of behavior Defendant Stokes was undertaking. *See id.*

As explained above, as the sole Sessions Court Judge, Defendant Stokes had substantial authority to control the behavior of those within his courtroom and the courthouse. *See* Tenn. Code Ann. § 16-1-102; *Sheppard*, 384 U.S. at 358. Defendant Stokes also had authority to hold individuals within the courthouse in contempt. *See* Tenn. Code Ann. § 16-1-103. Although Defendant Stokes' actions may have not been common, or even justified, he was still performing a normal function of a judge when he ordered Plaintiff, a recent spectator in his courtroom, to be detained and drug tested. *See Marchant*, 2010 WL 3872867, at *4.

When evaluating this exception, the Court must also consider the expectations of Plaintiff when she interacted with Defendant Stokes. *See Stump*, 435 U.S. at 362. This inquiry looks to whether the behavior occurred within a proper judicial context. *Marchant*, 2010 WL 3872867, at *5. Here, by attending her boyfriend's hearing before Defendant Stokes (Doc. 38 at 4), Plaintiff dealt with Defendant in his official capacity, even if Plaintiff was merely a spectator and not a party to any pending action before the court. *See Marchant*, 2010 WL 3872867, at *5.

Plaintiff, however, argues that she did not intend to deal with Defendant Stokes in a judicial manner when she returned to the courthouse to retrieve her boyfriend's personal property as a private citizen. (Doc. 38 at 8, 15.) Plaintiff further argues "[t]he events did not even occur in Defendant Stokes' chambers[,] Defendant Stokes was not on the bench, was not clothed in the vestments of his position, and was not conducting any apparent court business when he encountered Plaintiff in the hallway of the [c]ourthouse while Plaintiff was performing a private errand as a private citizen." (*Id*. at 13–14.)

11
Case 1:24-cv-00165-CLC-MJD   Document 42   Filed 02/21/25   Page 11 of 14
PageID #: 307

The Supreme Court has noted that absolute immunity is still available for judges who hold a litigant in contempt even when they are "not in [their] ... robes, ... no[r] in the courtroom itself." *Stump*, 435 U.S. at 361 (quotations and citations omitted). However, it is important to consider whether the "confrontation arose directly and immediately out of a visit to the judge in his official capacity." *Id*. In *Otra v. Repp*, the Sixth Circuit drew a distinction in its analysis, noting that dealing with a judge in his courtroom during a proceeding is different than "encountering him elsewhere in the courthouse while on a personal errand." 2023 WL 5666161, at *2 (6th Cir. Sept. 1, 2023).

On May 11, 2023, Plaintiff accompanied her boyfriend to the Meigs County General Sessions Court where Defendant Stokes presided as judge. (Doc. 38 at 4.) Plaintiff and her boyfriend exited the courtroom for the last time at 10:48 AM. (Doc. 39 at Camera 11, Part 2, 10:48:02.) Defendant Stokes ordered Plaintiff's boyfriend to take a urine drug screen as a bond condition. (Doc. 38. at 4.) After waiting some time with her boyfriend in the hallway, Plaintiff left the courthouse at 11:06 AM. (Doc. 39 at Camera 11, Part 2, 11:06:27.) She returned less than twenty minutes later to retrieve her boyfriend's phone at 11:25 AM. (*Id*. at Camera 11, Part 2, 11:25:05.) This was only one minute after Plaintiff's boyfriend had been placed in custody in the courthouse hallway. (*Id*. at Camera 11, Part 2, 11:23:25.)

When she returned to the courthouse, she "approached an officer to ask where [her boyfriend] was." (Doc. 38 at 8.) Accordingly, rather than fulfilling a personal errand, her objective at the courthouse was directly connected to her boyfriend's encounter with Defendant Stokes. *See Otra*, 2023 WL 5666161, at *2 (6th Cir. Sept. 1, 2023). Unlike the distinction made in *Otra v. Repp*, *see id*., the "confrontation arose directly and immediately out of [her] visit to the judge in

12

Case 1:24-cv-00165-CLC-MJD   Document 42   Filed 02/21/25   Page 12 of 14
PageID #: 308

his official capacity" when she asked officers about her boyfriend's status after attending his hearing before Defendant Stokes earlier that morning.  *See Stump*, 435 U.S. at 361.

Moreover, while Defendant Stokes was not wearing a robe when he encountered Plaintiff in the courthouse hallway, Defendant Stokes also did not wear a robe in his courtroom during the judicial proceedings that day.  (Doc. 39 at Camera 10, Part 1, 9:09:25, 10:08:38.)  Plaintiff, as a spectator in Defendant Stokes' courtroom earlier in the day, cannot reasonably argue that Defendant Stokes' dress affected her expectations in the hallway.  *See Stump*, 435 U.S. at 362.

Additionally, although the encounter did not happen in Defendant Stokes' courtroom or chambers, the courthouse hallway is very close in proximity to Defendant Stokes' courtroom and chambers.  (*See, e.g.*, Doc. 39 at Camera 11, Part 1.)  The courthouse footage shows Defendant Stokes standing directly outside the courtroom, which is adjacent to the hallway, multiple times during the morning of May 11, 2023.  (*See, e.g.*, *id*. at Camera 10, Part 2 at 11:00–11:20; *id*. at Camera 11, Part 2, 11:02–11:09.)  The footage also shows Defendant Stokes walking in the courthouse hallway multiple times that morning.  (*See, e.g., id*. at Camera 9, Part 1, at 8:54:10; *id*. at Camera 9, Part 2, at 10:39:36, 10:45:34, 11:02:11; *id*. at Camera 11, Part 1, 9:53:40–10:05; *id*. at Camera 11, Part 2 at , 10:39:36–10:41:13, 10:44:37, 10:58:45–11:00:03.)  Plaintiff even passed by Defendant Stokes in the hallway during a break from court.  (*Id*. at Camera 9, Part 1, at 9:54:37.)  Thus, it would be reasonable for Plaintiff to expect to encounter Defendant Stokes in his judicial capacity in the hallway when she returned to the courthouse.  *See Stump*, 435 U.S. at 362.  Therefore, when taken together, the facts support the conclusion that this exception does not apply in this case because Defendant Stokes was acting in his judicial capacity.

## IV. CONCLUSION

Accordingly, Defendant's motion to dismiss (Doc. 36) will be **GRANTED**. Plaintiff's claims against Defendant Stokes will be **DISMISSED WITH PREJUDICE**. Pursuant to the Scheduling Order (Doc. 17), an additional scheduling conference will be held on **March 13, 2025, at 3:00 p.m. Eastern.**

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**