UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| HANNAH ASHBROOK, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | 1:24-cv-165 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| MEIGS COUNTY, TENNESSEE, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

## M E M O R A N D U M

Before the Court is a motion for summary judgment by Defendant Meigs County, Tennessee. (Doc. 48.)  Plaintiff has not responded in the time given by Local Rule 7.1(a).  *See* E.D. Tenn. L.R 7.1(a).

For the reasons set out below, the Court will **GRANT** Defendant's motion for summary judgment (Doc. 48).

## I.    BACKGROUND[1]

On May 11, 2023, Plaintiff Hannah Ashbrook accompanied her boyfriend, Steven Kelsey, to the Meigs County General Sessions Court where Meigs County General Sessions Court Judge Casey Stokes was presiding.  (Doc. 38 at 4.)  Plaintiff and her boyfriend arrived at the courthouse around 8:30 AM (Doc. 39 at Camera 11, Part 1, 8:30:01) and entered the courtroom at 8:54 AM (*id*. at 8:54:32).  At 9:09 AM, Judge Stokes entered the courtroom through the main public hallway.

---

[1] Factual disputes and reasonable inferences regarding the underlying facts are presented in the light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

(*Id*. at Camera 10, Part 1, 9:09:25.)  Defendant Stokes was wearing jeans and a polo shirt rather than a judicial robe.  (*See id*.)

Plaintiff and her boyfriend exited the courtroom for the first time at 9:37 AM and were seen talking to a person who appears to be the boyfriend's lawyer. (Doc. 39 at Camera 9, Part 1, 9:37:24.)  Plaintiff reentered the courtroom at 9:43 AM.   (*Id*. at 9:43:46.)  Plaintiff and her boyfriend exited the courtroom for the last time over an hour later at 10:48 AM.  (*Id*. at Camera 11, Part 2, 10:48:02.) Plaintiff denies that she engaged in inappropriate conduct while in Defendant Stokes's courtroom.  (Doc. 38 at 6.)

As part of a bond condition, Stokes ordered Plaintiff's boyfriend to undergo a urine drug screen.  (Doc. 38 at 5.)  Following the hearing, Plaintiff waited some time with her boyfriend in the hallway, but she eventually left the courthouse at 11:06 AM.  (Doc. 39 at Camera 11, Part 2, 11:06:27.)  Plaintiff contends she left the premises without limitation and "no one sought to restrain her, counsel her, admonish her, or detain her."  (Doc. 38 at 15.)

Less than twenty minutes later, at 11:25 AM, Plaintiff returned to the Meigs County Courthouse to retrieve her boyfriend's phone after he had been placed into custody.  (Doc. 39 at Camera 11, Part 2, 11:25:05.)   When she returned to the courthouse hallway, she "approached an officer to ask where [her boyfriend] was."  (Doc. 38 at 8.)  Stokes, who was standing near the hallway, then ordered officers to detain and drug test her.  (Doc. 1 ¶ 29; Doc. 39 at Camera 10, Part 2, 11:25:19.)   According to Plaintiff, without probable cause or reason, Plaintiff was forced to submit to the drug test.  (Doc. 1 ¶ 29.)  Stokes was not wearing a judicial robe at this time.  (*Id*. ¶ 28; Doc. 39 at Camera 10, Part 2, 11:25:19.)

Plaintiff asserts she was taken into the bathroom and given thirty seconds to give a urine sample.  (Doc. 1 ¶¶ 37–38.)  Based on a verbal announcement that Plaintiff was positive for drugs,

2

Plaintiff was handcuffed and arrested while still inside the bathroom. (*Id.* ¶ 43.) Defendant Stokes then "*sua sponte* entered [a] Judgment . . . stating that Plaintiff was in criminal contempt and ordered that she be incarcerated in the Meigs County Jail for a period of ten (10) days." (*Id.* ¶ 47.) The reason for her confinement was listed as "PRE TRIAL MISDEMEANOR" in the Meigs County Sheriff's Department's Booking Report. (*Id.* ¶¶ 53–54.) Plaintiff was incarcerated in Meigs County Jail for ten consecutive days. (*Id.* ¶ 55.)

Based on these allegations, Plaintiff filed a complaint against Meigs County, Tennessee, Judge Stokes, Sheriff Jackie Melton, Probation Officer Carol Petit, and Deputy Ben Christian on May 8, 2024.[2] (Doc. 1.) Plaintiff invoked 42 U.S.C. §§ 1983 and 1988, constitutional law, and Tennessee state law as the legal basis for her complaint. (*Id.* at 1–2.) She asserts claims for false arrest, unlawful seizure, excessive force, denial of the right to notice and counsel, denial of due process, false arrest, and false imprisonment. (*Id.* at 11–29.) The only remaining Defendant, Meigs County, Tennessee, now moves for summary judgment. (Doc. 48.)

## II.    STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

---

[2] The parties stipulated that Plaintiff's action against Jackie Melton, Carol Petit, and Ben Christian and the official-capacity action against Judge Stokes be dismissed as redundant since Meigs County, Tennessee is also a party Defendant. (Doc. 40.) The Court dismissed with prejudice the claims against Casey Stokes in his individual capacity on the grounds of judicial immunity. (Doc. 43.)

*Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc*., 285 F.3d 415, 424 (6th Cir. 2002).  Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff").  In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Failing to respond to a motion for summary judgment does not mean it will be automatically granted.  *Siler v. Caruso*, No. 1:10-cv-97, 2011 U.S. Dist. LEXIS 11684 at *5 (W.D. Mich. Jan. 7, 2011) (quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2d. Cir. 1996)).  But when a party fails to respond, "nothing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992).

4

### III. DISCUSSION

Defendant moves for summary judgment as to each of Plaintiff's remaining claims. The Court will first address Plaintiff's § 1983 claim and then her state-law claims.

#### A. § 1983 Claims

In *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court recognized § 1983 liability for municipalities. To hold a municipality liable under § 1983, a plaintiff must show the violation of a constitutional right by someone acting under the color of state law and a "municipal 'policy or custom'" that was the "moving force" behind the constitutional violation. *Crabbs v. Scott*, 800 F. App'x. 332, 335–36 (6th Cir. 2020) (quoting *Monell*, 436 U.S. at 694). The Court held that while a local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents," a local government may be sued "when execution of a government's policy or custom … inflicts the injury [for which] the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694 (1978). This means there is no respondeat superior liability for municipalities.

There are four recognized *Monell* claims: "(1) an illegal or unconstitutional official policy, (2) ratification of illegal or unconstitutional actions by a policymaker, (3) illegal or unconstitutional actions stemming from a failure to train or supervise, and (4) a custom of tolerance or acquiescence of federal rights violations." *Gifford v. Hamilton Cnty.*, No. 24-5893, 2025 U.S. App. LEXIS 13293, at *7 (6th Cir. May 30, 2025) (internal quotation omitted).

Plaintiff alleges false arrest in violation of the First and Fourteenth Amendments, unlawful seizure and excessive force in violation of the Fourth Amendment, denial of the right to notice and counsel under the Sixth and Fourteenth Amendments, and denial of due process in violation of the Fourteenth Amendment. (Doc. 1 at 11–28.) The Court does not find it necessary to determine

5

whether the actions of Judge Stokes, taken in the light most favorable to Plaintiff, did, in fact, constitute violations of these constitutional provisions. This is because Plaintiff has demonstrated no evidence of a policy, practice, or custom that would have been the moving force behind any constitutional violation. Therefore, "even assuming that a constitutional violation occurred, the County cannot be held liable for it." *Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 382–83 (6th Cir. 2004); *see also Williams v. Macomb Cnty.*, No. 1:24-cv-13144, 2025 U.S. Dist. LEXIS 55241, at *8 (E.D. Mich. Mar. 25, 2025) ("Plaintiff does not allege any facts that even plausibly suggest Macomb County had a policy or custom, let alone one that caused his alleged constitutional injuries."); *Fluker v. Cuyahoga Cnty.*, 2019 U.S. Dist. LEXIS 132565, at *8 (N.D. Ohio Aug. 7, 2019) (noting that "at this juncture, the Court will assume, without yet deciding, that the § 1983 element of a constitutional violation has been met" before moving on to whether Plaintiff sufficiently alleged that the county was the moving force behind "this presumed constitutional violation").

Plaintiff has not brought forth any evidence of an illegal or unconstitutional policy that led to a deprivation of her constitutional rights. There is no evidence that Judge Stokes served as the final policymaker of Meigs County. (Doc. 49-1 at 1.) There is no evidence that the County had either a pattern of similar constitutional violations by untrained employees and continued adherence to such an approach or a single violation of federal rights that, combined with a showing that the County had failed to train its employees to handle recurring situations, presents an obvious potential for a constitutional violation. *See Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 739–39 (6th Cir. 2015). And Plaintiff has not put forth any evidence of a custom of tolerance or acquiescence to federal rights violations. Therefore, even assuming a constitutional violation occurred, there is no evidence in the record to support any of the four theories of *Monell* liability. *See Gifford*, 2025

6

U.S. App. LEXIS 13293, at *7. Nothing in the record suggests that there was a policy, practice, or custom of Meigs County that was the moving force behind any such violation. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

**B. State-Law Claims**

Defendant also moves to dismiss Plaintiff's state-law claims. (Doc. 49 at 2.) Defendant argues that if the Court decides to exercise supplemental jurisdiction, the state-law claims against Meigs County are barred by the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101, *et. seq*., which "clearly forbids state law action against a County such as Meigs if the action is grounded in 'civil rights.'" (*Id*. at 5.)

Under 28 U.S.C. § 1367, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (internal citations omitted); *see also Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009).

Here, Plaintiff's federal claim against Defendant will be dismissed because there is no evidence to sustain a finding of *Monell* liability. In doing so, the Court makes no determination about the merits of Plaintiff's state law claims, including Defendant's Tennessee Governmental Tort Liability Act defense. Because the Court will dismiss Plaintiff's federal claim, the Court will **DECLINE** to continue exercising supplemental jurisdiction over Plaintiff's state-law claim. *See* 28 U.S.C. § 1367(c)(3). Accordingly, Plaintiff's state-law claims will be **DISMISSED WITHOUT PREJUDICE**

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court will **GRANT** Defendant's motion for summary judgment (Doc. 48).    Plaintiff's *Monell* claim will be **DISMISSED WITH PREJUDICE**. Plaintiff's state-law claims will be **DISMISSED WITHOUT PREJUDICE**.


**AN APPROPRIATE ORDER WILL ENTER.**


/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

8